William YEAGER and Judy Yeager, Individually and as Guardian of their Minor Children, William W. Yeager, Aaron D. Yeager, and Crystal Yeager, Appellants,

v.

DRILLERS, INC., Union Pacific Resources Company, and Union Pacific Corporation, Appellees.

No. 01–94–01227–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 16, 1996.

Alton C. Todd, Hewitt, D. Otto, Alvin, for Appellants.

Timothy M. Watson, Boyce, J. William, Michelle A. Blain, Houston, Shayne D. Moses, Fort Worth, for Appellees.

Before HUTSON–DUNN and HEDGES, JJ.

## OPINION

MIRABAL, Justice.

The Yeagers appeal a summary judgment rendered in favor of appellees, Drillers, Inc., Union Pacific Resources Company, and Union Pacific Corporation. The Yeagers sued appellees for negligence after William Yeager injured his back in 1991 while working on an oil rig. The question on appeal is whether any of the appellees owed Yeager a duty of care. We affirm in part, and reverse and remand in part.

Union Pacific Resources Company (UPRC) is the leaseholder of a well site, known as the Odeing–Baca # 1 well, located in Fayette County, Texas. UPRC contracted with Drillers to drill a well at the well site. Drillers provided the rig for the well. UPRC also contracted with Superior Tubular Services to install casing into the well. Yeager worked for Superior and was the foreman of the casing crew. On the day of the accident, Yeager was standing on a platform to position casing pipe together. He fell when a rope he was using broke.

The Yeagers sued Drillers, UPRC, and Union Pacific for negligence in failing to provide Yeager with a safe place to work and in failing to inspect and supervise the work area to determine if the casing job was being performed safely and in compliance with safety regulations and industry standards. They sued UPRC and Union Pacific for additional acts of negligence in hiring Drillers as the rig operator and in failing to supervise Drillers. They sued Drillers for additional acts of negligence in failing to provide Yeager with necessary and safe equipment, in refusing to allow him to perform his work in a safe manner and in failing to warn him of the dangers of working with the piece of rope that was given to him.

The appellees moved for summary judgment, asserting they did not owe Yeager a duty as a matter of law. The trial court rendered a final summary judgment in favor of Drillers, UPRC, and Union Pacific on November 7, 1994.

Summary judgment is proper only when a movant establishes that no genuine issue of material fact exists, thereby entitling the movant to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). In reviewing the summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Id.* A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Marchal v. Webb*, 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

In three points of error, the Yeagers contend the trial court erred in granting summary judgment because the trial court did not apply the correct summary judgment law and because material fact issues exist to preclude summary judgment. They argue that

Drillers (as the rig owner and driller) and UPRC and Union Pacific (as the leaseholder and operator) exercised control over Yeager's work and therefore owed him a duty.

■ Duty is the threshold question in a negligence case. *Midkiff v. Hines,* 866 S.W.2d 328, 331 (Tex.App.—Houston [1st Dist.] 1993, no writ). Whether a duty exists is a question of law. *Id.* at 332. An owner or occupier of land has a duty to use reasonable care to keep the premises under his control in a safe condition. *Redinger v. Living, Inc.,* 689 S.W.2d 415, 417 (Tex.1985). A general contractor, who is in control of the premises, is charged with the same duty as an owner or occupier. *Id.*[1]

■ When an independent contractor is performing work on the premises, however, the general rule is that an owner or occupier does not have a duty to see that an independent contractor performs work in a safe manner. *Redinger,* 689 S.W.2d at 418. An independent contractor is responsible for conducting its work in a safe manner when the work is conducted by and is under the control of the independent contractor, and when the danger arises out of the independent contractor's employee's performance of the work. *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987).

■ There is an exception to this general rule. When the owner or general contractor retains or exercises some control over an independent contractor's work, it may be liable to others, unless it exercises reasonable care in supervising the subcontractor's activity. *Redinger,* 689 S.W.2d at 418. This exception applies when the employer retains some control over the manner in which the independent contractor's work is performed, but does not retain the degree of control that would subject him to liability as a master. *Id.* The employer's role must be more than a general right to order the work to start or stop, to inspect progress or receive reports. *Id.*

■ Moreover, if a right of control over the work has a contractual basis, the fact that no actual control was exercised will not absolve a premises owner of liability. *Pollard v. Missouri Pac. R.R.,* 759 S.W.2d 670, 671 (Tex.1988). In such a case, it is the right of control, and not the actual exercise of control, that gives rise to a duty to see that an independent contractor performs work in a safe manner. *Id.*

We must determine whether the summary judgment evidence shows as a matter of law that none of the appellees owed Yeager a duty of care.

### Summary judgment evidence

The service contract between Superior and UPRC provided that Superior would furnish all necessary labor, machinery, equipment, tools, and transportation other than any item UPRC specifically agreed to provide. The contract also provided:

> Contractor (Superior) shall be an independent contractor with respect to the work, and neither Contractor nor anyone employed by Contractor shall be deemed for any purpose to be the agent, servant or representative of UPRC in the performance of the work ... and UPRC shall have no direction or control of Contractor, or its employees and agents, except in the results to be obtained.

UPRC also contracted with Drillers to drill a well at the well site. Drillers provided the rig for the well. The contract between UPRC and Drillers provided:

> Contractor (Drillers) shall be an independent contractor with respect to performance of all work hereunder and neither Contractor nor anyone employed by Contractor shall be deemed for any purpose to be the employee, agent, servant, or representative of Operator (UPRC) in the performance of any worker service.... Operator shall have no direction or control of Contractor or its employees and agents except in the results to be obtained....

---

1. This duty to keep the premises in a safe condition may subject the owner of land or general contractor to direct liability for negligence in two situations: those arising from a premises defect and those arising from an activity or instrumen-

tality. *Redinger,* 689 S.W.2d at 417. As in *Redinger,* this is not a premises defect case. This case involves an injury caused by an activity conducted on the premises. *See id.*

The contract also stated that the performance and supervision of all work under the contract was to be by Drillers, but UPRC would have unlimited access to the premises to determine whether the work was being performed by Drillers according to the contract.

No contract existed between Drillers and Superior.

On the day of Yeager's accident, September 12, 1991, UPRC had a company representative, known as the "company man," at the well site. He was the only representative of UPRC at the rig that day. Yeager testified that when he and his crew arrived at the well site, Superior had already delivered the tools, and Drillers had put Superior's tools on the rig floor.

Yeager spoke with Drillers' tool pusher before beginning work. Yeager testified that the tool pusher's job is to make sure everything is done right. He testified that the tool pusher told him to hook up the casing tongs to the rig tong line instead of to the air hoist line. He told the tool pusher that it would be safer if he could rig up to the air hoist line, but the tool pusher refused.

The tool pusher told him he wanted to be able to use the air hoist line in case something happened with the pipe or if they needed the air hoist to pull a joint of pipe up to the rig floor. Yeager explained that the tool pusher would also want the air hoist free to move heavy equipment at the rig. Yeager testified that the big difference between using the rig tong line rather than the air hoist line was that he had to move the casing tongs farther to get to the casing.

Yeager testified that he told the tool pusher that he would be able to hang the casing tongs on the rig tong line. Yeager then asked the tool pusher if he had any rope, and the tool pusher responded that he did not. Yeager and his crew began working without a rope. Yeager testified that, after they had run some pipe, a Drillers' employee gave some rope to one of Yeager's co-workers. Yeager testified that the driller handed the tong operator (a Superior employee) a rope to tie to the casing tongs. Yeager did not know where or from whom the driller got the rope. The tong operator tied the rope to the casing tongs. He then handed the rope to Yeager, who began pulling the casing tongs on to the casing. Yeager fell when the rope broke after he had pulled the tongs four or five times on the casing.

Yeager testified that he expects to have equipment for a casing job supplied by and sent to the job site by his employer, Superior. He and his crew try to bring rope to each job, but if there is rope already at the job site, his crew will usually use it. He also testified, however, that he normally relies on the drilling contractor at a rig to provide him with the rope he needs.

UPRC hired Superior because Superior knew how to set casing and had the expertise. Superior hired Yeager as the crew's foreman because he had expertise in setting casing. Yeager had performed about 500 casing jobs. Yeager hired the hands on his crew and thought the crew was competent to set casing. He also testified, however, that his chances of getting hurt that day would have been less if he had people familiar with running casing.

## Union Pacific Corporation's summary judgment

The uncontroverted summary judgment evidence shows that Union Pacific Corporation did not own an interest in the Odeing–Baca # 1 well. Union Pacific Corporation has never entered into a contract with any entity involving the well and has never provided any materials to the rig located at the well. Union Pacific Corporation did not have a representative at the well. There is no allegation or evidence indicating that Union Pacific Corporation and UPRC are anything but separate and distinct entities.

Because Union Pacific Corporation was not an owner or occupier of the well site and because it was not a party to any contract regarding the well site, it clearly did not owe a duty to Yeager. Therefore, summary judgment as to Union Pacific Corporation was proper.

### UPRC's summary judgment

The summary judgment evidence shows that UPRC did not control Yeager's work.

The contract between UPRC and Superior did not give UPRC the right to control Superior's work. UPRC hired Superior, Yeager's employer, as an independent contractor and did not retain in their contract control over Superior's work.

The summary judgment evidence also shows UPRC did not exercise control over Yeager's work. The UPRC company man did not supervise, give instructions, or coordinate Superior's work at the well. The company man did not direct Yeager's work. The company man did not get involved, and Yeager did not ask him to get involved, in the discussion between Drillers' tool pusher and Yeager. The company man did not respond to Yeager's request to tie the casing tongs to the air hoist line.

UPRC did not provide or select any of the equipment used by Superior to set casing in the well. UPRC did not provide rope to Superior or any of its crew members. Yeager testified that when he worked on UPRC-operated rigs in the past, about half the time he brought his own rope to use. If there was rope at the job site, he would use it. The UPRC company man did not give him rope, and he did not ask the company man for rope.

Because UPRC did not retain the right to control, and did not exercise any control over Yeager and the manner in which he performed his work, it owed him no duty of care. *Quinn,* 726 S.W.2d at 19; *see also Corpus v. K–J Oil Co.,* 720 S.W.2d 672, 674 (Tex.App.—Austin 1986, writ ref'd n.r.e.). Therefore, the summary judgment in favor of UPRC under a negligence theory was proper.

The Yeagers also claimed that UPRC was negligent in hiring Drillers. The basis of responsibility under the doctrine of negligent hiring is the master's own negligence in hiring an incompetent employee whom the master knows or by the exercise of reasonable care should have known was incompetent, thereby creating an unreasonable risk of harm to others. *Arrington v. Fields,* 578 S.W.2d 173, 178 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.).

UPRC's summary judgment evidence shows that both Superior and Drillers had performed work for UPRC in the past, and in doing so, both proved they had the necessary experience and expertise to perform work in a competent manner. Yeager testified that he had been on that particular rig of Drillers a few times before, that it was one of the better rigs, and that it was a good rig on which to run pipe. He testified that Drillers' workers were good and safe. No evidence controverts this evidence. Summary judgment on the Yeagers' negligent hiring theory was proper.

### Drillers' summary judgment

The Yeagers contend Drillers was the general contractor at the well and was contractually responsible for the performance and supervision of the work at the well. They contend Drillers controlled Yeager's work and therefore owed him a duty of care.

A contract between the parties that establishes an independent contractor relationship is determinative of the parties' relationship in the absence of extrinsic evidence indicating that the contract was a subterfuge or that the hiring party exercised control in a manner inconsistent with the contract. *Ross v. Texas One Partnership,* 796 S.W.2d 206, 210 (Tex.App.—Dallas 1990), *writ denied per curiam,* 806 S.W.2d 222 (Tex.1991). The summary judgment evidence shows Drillers was not the general contractor at the well site. UPRC hired both Superior and Drillers as independent contractors. UPRC hired Drillers to provide the rig and drill the well; UPRC hired Superior to supply the casing crew and to install the casing in the well. No contract exists between Drillers and Superior, much less one giving Drillers control over Superior's work.

The Yeagers cite a provision from Drillers contract with UPRC to show that Drillers had control over the entire well site. However, that provision merely states that the performance and supervision of all work performed *under the contract* shall be Drillers'

responsibility. The provision is consistent with Drillers' status as an independent contractor. It does not extend Drillers' responsibility to perform and supervise work not covered under its contract with UPRC, *i.e.,* it does not give Drillers control over *other* contractors' work at the well.

■ The obligation of one contractor to supervise the work of another contractor is not one imposed by law, but would have to be imposed by contract. *Williford Energy Co. v. Submergible Cable Serv., Inc.,* 895 S.W.2d 379, 386 (Tex.App.—Amarillo 1994, no writ). Drillers did not contractually have the right to control or supervise Yeager's work.

The Yeagers also assert that Drillers' tool pusher directed the details of Yeager's work. The summary judgment evidence shows, however, that Drillers did not tell Yeager how to do his job. Drillers' tool pusher told Yeager only that he could not attach his casing tongs to Drillers' air hoist line. Drillers did not tell Yeager how to operate his equipment. In short, Drillers did not direct how Yeager and his crew were to install the casing in the well.

Drillers' refusal to allow Yeager to use its equipment (the air hoist line) did not amount to actual control. Instead, by refusing to allow another independent contractor to use its equipment, Drillers exercised control over its own work and equipment. Drillers cites *Thomas v. Internorth, Inc.,* 790 F.2d 1253, 1255 (5th Cir.1986) (applying Texas law), in which the court held that a premise owner did not exercise control over an independent contractor's employee's work when it supplied a ladder to the employee from which the employee fell. There was no claim that the ladder was defective. In accordance with *Thomas,* Superior had the duty, not Drillers, to provide Yeager with an experienced casing crew. *See id.* Thus, any claim that Drillers did not give Yeager an experienced hand to help must fail. Because Drillers did not have a duty to supervise Yeager's work, we hold summary judgment was proper as to the Yeagers' claims against Drillers for negligent supervision and inspection of the work site.

■ The Yeagers also contend that Drillers owed Yeager a duty because it supplied and positioned the rope that broke and caused Yeager to fall. We agree with Drillers that, if Yeager required additional equipment or materials, Superior was required under its contract with UPRC to supply the materials to him. *See Thomas,* 790 F.2d at 1255. Drillers had no duty to give Yeager any rope; however, once it gave him the rope, its duty changed.

■ One who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby. *Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 395–96 (Tex.1991); *Williford,* 895 S.W.2d at 386. The summary judgment evidence shows that a Drillers employee gave Yeager's coworker the rope that Yeager contends broke and caused him to fall. Yeager testified, however, that he did not know where or from whom the driller got the rope. Yeager also testified that, while he tries to bring rope to each job, he relies on the drilling contractor to provide him with the rope he needs.[2]

While Drillers did not have a duty to provide Yeager with any rope, if it voluntarily did so, it assumed a duty to exercise reasonable care that Yeager would not be injured by the rope. *Williford,* 895 S.W.2d at 386. We hold that a fact issue exists as to whether Drillers owed Yeager a duty of care, and if so, whether that duty was breached.

Therefore, the trial court erred in rendering summary judgment in favor of Drillers.

### Conclusion

We overrule points of error one through three as to appellees Union Pacific Corporation and UPRC; however, we sustain the points as to Drillers.

Accordingly, we affirm the summary judgment rendered in favor of UPRC and Union Pacific Corporation. We reverse the sum-

---

**2.** We disagree with the Yeagers' contention that a Drillers employee tied the rope to the casing tongs. The summary judgment evidence shows that Yeager's coworker, the tong operator, positioned and tied the rope to the casing tongs.

mary judgment rendered in favor of Drillers and remand the cause to the trial court.