**PINKERTON'S d/b/a Pinkerton Security Investigation Services, Appellant,**

v.

**David MANRIQUEZ, Appellee.**

**No. 14–96–00560–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 26, 1997.

Rehearing Overruled Jan. 29, 1998.

Evelyn T. Ailts, Dean G. Pappas, Houston, for appellant.

Kevin Dubose, John Michael Devlin, R. Christopher Goldsmith, John L. Barnes, Houston, for appellee.

Before YATES, HUDSON and FOWLER, JJ.

## MAJORITY OPINION

YATES, Justice.

Appellant, Pinkerton's d/b/a Pinkerton Security Investigation Services ("Pinkerton"), appeals a judgment on a jury verdict in favor of appellee, David Manriquez ("Manriquez"), for personal injuries sustained when he attempted to assist the owner of a stalled vehicle by pushing the vehicle up an incline of a parking garage. We reverse the judgment of the trial court and render a judgment that Manriquez take nothing on his claims against Pinkerton.

### I. Background

In February 1991, Manriquez worked as a general maintenance person for Pedus Building Services ("Pedus"), which was hired to provide cleaning services for the Regency Parking Garage ("the garage"), located in downtown Houston. Pinkerton was hired to provide security for the garage. At 6:45 a.m., on February 19, 1991, a contract parker in the garage, Arttemus Jones ("Jones"), called Pinkerton's security officer, Timothy Chaney ("Chaney"), in the cashier's booth, and informed him that his car was stalled. Chaney, who could not leave the cashier's booth unattended, ordered Manriquez to assist Jones with the stalled car.[1]

Manriquez found Jones and his car on the up-ramp between the 12th and 13th floors.

---

1. Manriquez's claim that Chaney ordered him to assist Jones with his car was disputed at trial. Chaney testified that he asked Manriquez to check out the situation and report back to him. Also, it was disputed whether Chaney knew Jones' car was stalled on the ramp between floors and whether he had relayed that information to Manriquez. Manriquez asserted that Chaney had told him the car was stalled on the ramp. Manriquez also testified that he was not

Manriquez and Jones, without reporting back to Chaney, decided to push the car up the ramp to the floor above. Manriquez stood behind the car while Jones put the car in neutral. After Jones put the car in neutral, the car rolled backwards, pinning Manriquez against the wall. As a result of the accident, Manriquez lost part of his fourth and fifth fingers on his left hand. Manriquez's back and left knee were also injured.

Claiming negligence, Manriquez and his wife, Flor Manriquez ("Flor"), sued Jones, Chaney, Pinkerton, and Block 299 Venture, comprised of Tenneco Realty, Inc. d/b/a Regency Parking Garage ("Tenneco") and Prudential Insurance Company of America ("Prudential"), the owners of the garage.[2] Flor nonsuited all the defendants and Manriquez nonsuited Jones. Based on the statute of limitations, all claims against Chaney were dismissed on summary judgment. Tenneco and Prudential were nonsuited after they had reached a settlement agreement with Manriquez. Pinkerton was the only remaining defendant at trial.

At trial, finding Pinkerton 35% negligent, Manriquez 35% negligent, and Tenneco and Prudential 30% negligent, the jury returned a verdict in favor of Manriquez for $303,-500.00 in damages even though Manriquez had only pled $150,000.00 in damages. Manriquez moved for leave to file a post-trial amended petition, in which he sought to plead for total damages of $303,500.00, in order to conform to the amount of damages the jury had awarded him. The trial court, however, denied Manriquez leave and calculated the damages according to the amount which Manriquez had originally pled.

Manriquez appeals the trial court's calculation of damages. In his sole point of error, Manriquez claims the trial court erred in calculating the damages in accordance with the amount Manriquez had pled rather than the amount which the jury had awarded him.

Pinkerton filed a cross-appeal, raising eight points of error. In its first two points of error, Pinkerton claims that as a matter of law they owed no duty to Manriquez, or, alternatively, that there was no evidence upon which to impose a duty to Manriquez. In its third and fourth points of error, Pinkerton attacks both the legal and factual sufficiency of the evidence to support a finding that Pinkerton proximately caused Manriquez's damages. In its fifth point of error, Pinkerton asserts it cannot be held vicariously liable for the acts of an employee who did not owe a duty to Manriquez. In its remaining points of error, Pinkerton claims the evidence is insufficient to support an award of damages for mental anguish and for future physical pain. Because the issues of duty and proximate cause are dispositive, we shall address these points of error before addressing Pinkerton's remaining points of error and Manriquez's point of error.

## II. Standard of Review— Legal Sufficiency

When reviewing a challenge to the legal sufficiency of evidence, *i.e.*, a "no evi-

---

aware that Chaney could not leave the cashier's booth unattended.

2. Manriquez specifically pled the defendants were negligent in:
 1. Failing to enforce policies and procedures to move stalled vehicles from the ramp or about the parking garage in a safe manner;
 2. Failing to call a wrecker or person similarly equipped who is trained in the safe handling of stalled vehicles to clear the ramp;
 3. Chaney's failure to contact his supervisor to obtain direction as to how to proceed to deal with the situation presented by the stalled vehicle on the ramp;
 4. Chaney's failure [to] follow his oral and/or written instructions to *first* contact his superiors after notification by Jones that his vehicle was stalled;

5. Chaney's failure to follow instructions to contact his supervisor if anything occurred on his shift that he did not know how to handle;
6. Chaney's directing Plaintiff David Manriquez to assist the driver of a stalled vehicle without Plaintiff David Manriquez having been properly trained to engage in such activity and without adequate mechanical or human assistance;
7. Failing to provide Plaintiff David Manriquez with a written job description setting out the limits of his responsibility;
8. Failing to provide to Plaintiff David Manriquez instructions as to what personnel had authority to direct his activities; and,
9. Failing to provide to Plaintiff David Manriquez written instruction as to what personnel had authority to direct his activities.

dence" point of error, the reviewing court may consider only the evidence and inferences that support the challenged findings and should disregard all evidence and inferences to the contrary. *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996); *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). If there is more than a scintilla of evidence to support the finding, the claim is sufficient as a matter of law, and any challenges merely go to the weight of the evidence. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993). The court may sustain a "no evidence" point of error if the record reveals one of the following:

(1) a complete absence of evidence of a vital fact;

(2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact;

(3) the evidence offered to prove a vital fact is no more than a scintilla; and

(4) the evidence established conclusively the opposite of the vital fact.

*Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990). There is some evidence when the proof supplies a reasonable basis upon which reasonable minds could reach different conclusions about the existence of a vital fact. *Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992). When the reviewing court sustains a "no

evidence" point, it is the court's duty to render judgment for the appellant because that is the judgment the trial court should have rendered. *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176 (1986); *National Life Accident Ins. Co. v. Blagg*, 438 S.W.2d 905, 909 (Tex.1969).

### III. Legal Duty

In order to prevail on a cause of action for negligence, the plaintiff must satisfy three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately caused by the breach. *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex.1995); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 476 (Tex.1995). The threshold issue in a negligence case is whether the defendant owed a duty to the plaintiff. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). The plaintiff must establish both the existence of a duty and the violation of that duty by the defendant. *Greater Houston Transp. Co.*, 801 S.W.2d at 525; *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983). Whether the defendant owed a duty to the plaintiff is a question of law for the court to decide from the particular facts of the case. *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 289 (Tex.1996).[3]

---

**3.** Pinkerton, in post-submission briefing requested by this court, argues that when reviewing the legal sufficiency of the evidence in support of an implied finding of duty, we should include all the facts surrounding the event at issue, not just the facts supporting the verdict. To hold otherwise, according to Pinkerton, means this court would be reviewing only part of the evidence the trial court considered in establishing that Pinkerton owed a duty to Manriquez.

In support of this argument, Pinkerton cites to a recent court of appeals case, *Central Power & Light Co. v. Romero*, 948 S.W.2d 764 (Tex.App.— San Antonio 1996, n.w.h.). The San Antonio court noted the standard for determining the existence of a legal duty is a question of law for the court to decide. *Id.* at 766.

The court further stated, " 'However, a jury question arises when (1) the facts and circumstances that a court would use to determine duty are disputed, or (2) the inferences that may be drawn from the facts are disputed.' " *Id.* (quoting 1 *Texas Torts and Remedies* § 1.03, cited with

approval in *Mitchell v. Missouri–Kansas–Texas R.R. Co.*, 786 S.W.2d 659, 662 (Tex.), *cert. denied*, 498 U.S. 896, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990); *see also Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex.1991)). The court then stated:

While we recognize and follow *Mitchell* and *Sbrusch* insofar as they state that the underlying circumstances, if disputed, may give rise to a question of fact, we question whether these statements mean that the evidence arguably giving rise to a duty is subject to legal and factual sufficiency review. If this were true, and the evidence were legally but not factually sufficient to support [the] imposition of a duty, the usual rules relating to disposition would require that we reverse and remand the case for a new trial. But duty is a question of law and logically should be decided *de novo* on the record before the trial court.

*Id.* at n. 1.

Recognizing this "conundrum," the court assumed "without deciding that the question of

In ascertaining whether the defendant owed a duty to the plaintiff, the court considers: "the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden guarding against the injury, and the consequences of placing the burden on the defendant." *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex.1994); *Greater Houston Transp. Co.*, 801 S.W.2d at 525. Additional factors for consideration include whether one party had superior knowledge of the risk or a right to control the actor who caused the harm. *Golden Spread Council, Inc.*, 926 S.W.2d at 290.

Of the above listed factors, foreseeability is the most significant consideration. *Greater Houston Transp. Co.*, 801 S.W.2d at 525. It is not necessary for the defendant to have anticipated the particular occurrence in order for a duty to arise. *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 175 (Tex.App.—Houston [14th Dist.] 1994, writ denied). Rather, a risk of harm is held to be foreseeable if the risk reasonably appears or should appear that others in the exercise of their lawful rights may be injured. *Id.*

### A. Premises Liability

Manriquez asserts that as an invitee, Pinkerton owed him a duty to exercise reasonable care, including the duty to protect and safeguard him from unreasonably dangerous conditions on the premises or to warn of their existence.

Under Texas law, an invitee is a person who enters the premises of another in answer to an express or implied invitation from the owner or occupier for their mutual benefit. *Montes v. Indian Cliffs Ranch, Inc.*, 946 S.W.2d 103, 105 (Tex.App.—El Paso 1997, writ requested) (citing *Peerenboom v. HSP Foods, Inc.*, 910 S.W.2d 156, 161 (Tex. App.—Waco 1995, no writ)). The duty owed to an employee of a contractor working on the premises of an owner or occupier at the time of injury is that owed to a business invitee. *Shell Chem. Co. v. Lamb*, 493 S.W.2d 742, 747 (Tex.1973); *Staublein v. Dow Chemical Co.*, 885 S.W.2d 502, 505 (Tex. App.—El Paso 1994, no writ). An owner or occupier of land has a duty to use reasonable care to protect an invitee from reasonably foreseeable injuries. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975); *Yeager v. Drillers, Inc.*, 930 S.W.2d 112, 115 (Tex. App.—Houston [1st Dist.] 1996, no writ) (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.1985)). Generally, a person who does not own or possess the premises does not assume any liability under a premise liability theory, unless he assumes control over, and responsibility for, the premises. *City of Denton v. Van Page*, 701 S.W.2d 831, 835 (Tex.1986); *Rendleman v. Clarke*, 909 S.W.2d 56, 60 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd as moot).

The duty of an owner or occupier of land to keep the premises in a safe condition may subject him to liability in two situations: (1) those arising from a defect in the premises, and (2) those arising from an activity or instrumentality. *Redinger*, 689 S.W.2d at 417; *Kovar v. Krampitz*, 941 S.W.2d 249, 255 (Tex.App.—Houston [14th Dist.] 1996, n.w.h.). To recover on a premises defect theory, a person must have been injured by a condition on the property, rather than an activity. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992); *Kovar*, 941 S.W.2d at 255. Otherwise, in order to recover for injuries sustained as a result of a negligent activity, the plaintiff must have been injured by, or as a contemporaneous result of an activity. *Keetch*, 845 S.W.2d at 264; *Rendleman*, 909 S.W.2d at 60.

Manriquez's injury arose as a result of an alleged negligent activity conducted on the premises rather than as a result of a premise defect. Even if this case involved a premise defect, Pinkerton would not owe a duty to Manriquez under a premise liability theory. A review of the evidence and testimony presented at trial reflects that Regency manage-

fact underlying imposition of legal duty, like other questions of fact, is subject to legal and factual sufficiency review." *Id.* While we agree with the San Antonio court of appeals that the situation presented is a conundrum, we find it is not

necessary for us to reach this issue because the result is the same whether we consider only the evidence supporting the judgment, or whether we also consider the evidence contrary to the judgment.

ment kept close control over the garage. Ray Schneider, manager of the Regency garage at the time of the accident, testified that he had the ultimate responsibility for all the day-to-day operations of the garage, including safety and adequate staffing. Schneider supervised Pinkerton and Pedus personnel in an "indirect manner." The contract services personnel reported directly to other garage managers, who, in turn, reported to Schneider. Thus, Pinkerton did not exercise sufficient control over the premises to impose upon it the duties of a possessor occupier. *See Rendleman*, 909 S.W.2d at 60.

 This court has previously held that where the employees of two subcontractors are working on a construction site 1) in close proximity, 2) with the same objective, and 3) aware of each other's presence on the site, those employees owed a duty to prevent injury to the other through negligence. *Christian v. Dishongh*, 449 S.W.2d 823, 825 (Tex. Civ.App.—Houston [14th Dist.] 1969, no writ). More recently, however, decisions from other courts of appeals, and an opinion from this court, have found where the owner or general contractor is in control of the premises, there is no special relationship between the employees of different subcontractors which would bring them within the scope of each other's duty. *See, e.g., Rendleman*, 909 S.W.2d at 60; *Bennett v. Span Indus., Inc.*, 628 S.W.2d 470, 473 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.).

Here, there was no special legal relationship between Pinkerton and Manriquez—employees of two separate contractors—which would bring Manriquez within the scope of Pinkerton's duty under a premises liability theory. *See Rendleman*, 909 S.W.2d at 60; *Bennett*, 628 S.W.2d at 473. Thus, duty, if any, would have to arise under the negligent activity theory.

### B. Negligent Activity

 In order to recover for injuries sustained as a result of a negligent activity, Manriquez must have been injured by, or as a contemporaneous result of, that activity. *Keetch*, 845 S.W.2d at 264; *Rendleman*, 909 S.W.2d at 60.

The trial testimony of Chaney, Ralph Burdette, district manager for Pinkerton, and Schneider described the procedures to be followed in the event of an unusual occurrence such as a vehicle stalled on the ramp of the garage. First, the guard on duty was required to call his supervisors located in the Tenneco building, who, in turn, were to call Schneider. Schneider would then arrange to block the floors below the stalled vehicle and then move the stalled vehicle with a truck. Burdette testified that Pinkerton did not train its security personnel specifically to handle stalled cars. They were responsible, however, for gathering information and reporting the situation to Pinkerton's personnel in the Tenneco building.

It is not disputed that Manriquez was injured as a result of trying to push a car up a steep incline. Chaney's failure to first report the stalled vehicle to his supervisors rather than ordering Manriquez to assist Jones with his stalled car was not the activity which injured Manriquez. Rather, the trial testimony of both Jones and Manriquez established that they alone made the decision to move the car, not Chaney.

### C. Affirmative Duty

 Manriquez further asserts that Chaney voluntarily entered into a course of conduct to aid Jones, thereby assuming a duty not to make the situation worse. While an individual is under no legal duty to come to the aid of another in distress, he has a duty to avoid any affirmative act which might worsen the situation. *Otis Eng'g Corp.*, 668 S.W.2d at 309.

> If a party negligently creates a situation, then it becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in their exercise of their lawful rights may be injured thereby.

*El Chico*, 732 S.W.2d at 311 (quoting *Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109, 110 (1942)).

While perhaps Chaney did not exercise his best judgment by not following the correct procedure by first calling his supervisors, ordering Manriquez to assist Jones did not make the situation worse. As already ob-

served above, Chaney played no role in Jones and Manriquez's decision to push the car up the garage ramp. *See City of Denton v. Van Page*, 701 S.W.2d 831, 836 (Tex.1986) (Kilgarlin, concurring) (plaintiff could not recover under theory that defendant voluntarily undertook an affirmative course of action where there was no evidence that defendant's actions increased the risk of harm).

Manriquez further claims Chaney should have reasonably foreseen that Manriquez, without any training and equipment would have been injured when he sent Manriquez to aid Jones. We find, however, it was not reasonable for Chaney to have anticipated that Manriquez would stand behind a vehicle, which was in neutral on a steep incline, and attempt to push it up the ramp.

### D. Right of Control

Manriquez also argues that Pinkerton assumed control of him and directed him into a dangerous situation. Manriquez testified that he was afraid he would lose his job if he did not follow Chaney's order. Under Texas law, the obligation of one contractor to supervise the work of another contractor is imposed only by contract, not by law. *Yeager*, 930 S.W.2d at 118; *Williford Energy Co. v. Submergible Cable Serv., Inc.*, 895 S.W.2d 379, 386 (Tex.App.—Amarillo 1994, no writ). At trial, no documents or testimony evincing a contract between Pedus and Pinkerton was presented. Pinkerton, therefore, did not have a contractual right to control or supervise Manriquez's work.

Moreover, contrary to Manriquez's assertions, the evidence presented at trial, including Manriquez's testimony, establishes that Pinkerton had no right of control over Manriquez or his work. First, Manriquez testified that no Pinkerton personnel had ever directed him to anything on any prior occasions. Second, Manriquez further testified that his supervisor had never told him that if he did not follow orders from Pinkerton's personnel, he would lose his job. Third, Manriquez testified that although Chaney ordered him to assist Jones with the stalled car, Chaney did not order him to stand behind the car, with it in neutral, and push it up the ramp. Fourth, Manriquez testified that he and

Jones, alone, devised the plan to push the car up to the next floor. Other than Manriquez's testimony that Chaney ordered him to assist Jones and that he was afraid of losing his job if he did not follow Chaney's orders, Manriquez failed to present even a scintilla of evidence that Pinkerton had a right to control his work.

We conclude that Pinkerton owed no duty to Manriquez. Therefore, we sustain Pinkerton's first two points of error. Even if we were to determine that Pinkerton owed Manriquez a duty, Manriquez, nonetheless, failed to establish that Chaney's actions proximately caused his injuries.

### IV. Proximate Cause

In its third and fourth points of error, Pinkerton challenges the jury's finding of proximate cause on the basis of both legal and factual insufficiency. Because Pinkerton raises both legal and factual sufficiency points, we must first review the legal sufficiency to determine if there is any evidence of probative value to support the jury's finding on proximate cause. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981). If there is legally sufficient evidence to support the finding on proximate cause, we must then review the factual sufficiency of the evidence by weighing and considering the evidence both in support of, and contrary to, the challenged findings. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Under a factual sufficiency review, we must uphold the jury's findings unless they are so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

Proximate cause consists of two elements: (1) cause in fact, and (2) foreseeability. *Leitch*, 935 S.W.2d at 118; *Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d at 477 (Tex.1995); *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995). The plaintiff may not establish these elements by mere conjecture, guess, or speculation. *Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d at 477. Cause in fact exists if "the defendant's act or omission was a substantial factor in

bringing about the injury which would not otherwise have occurred." *Union Pump Co.*, 898 S.W.2d at 775. The plaintiff, however, has not shown cause in fact if the defendant's negligence did no more than provide a condition which made the injury possible. *Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d at 477 (citing *Bell v. Campbell*, 434 S.W.2d 117, 120 (Tex.1968)). Rather, "'[t]he evidence must go further, and show that such negligence was the proximate, and not the remote, cause of [the] resulting injuries ... [and] justify the conclusion that such injury was the natural and probable result thereof.'" *Id.* (quoting *Carey v. Pure Distrib. Corp.*, 133 Tex. 31, 124 S.W.2d 847, 849 (1939)). Even if the injury would not have occurred but for the defendant's actions, the nexus between the defendant and the plaintiff's injuries may be too attenuated to constitute legal cause. *Id.; Union Pump Co.*, 898 S.W.2d at 776; *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex.1991).

▮▮▮ Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d at 478; *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). The danger of injury is foreseeable if its "'general character ... might reasonably have been anticipated.'" *Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d at 478 (quoting *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 551 (Tex.1985)). The determination of foreseeability turns on "'common experience applied to human conduct.'" *Id.* (quoting *City of Gladewater v. Pike*, 727 S.W.2d 514, 518 (Tex.1987)). "Foreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings injury." *Id.; Green v. GS Roofing Prods. Co.*, 928 S.W.2d 265, 268 (Tex.App.—Houston [14th Dist.] 1996, no writ).

▮▮▮ At most, Chaney, by sending Manriquez to assist Jones with his car, provided the condition which made his injury possible.

*See Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d at 477 (citing *Bell*, 434 S.W.2d at 120). Any connection between Chaney ordering Manriquez to assist with the stalled car, and Manriquez and Jones' decision to push the car up a steep incline by placing the car in neutral and standing behind it, is too attenuated to constitute "cause in fact" of Manriquez's resulting injuries. Moreover, based on common experience, it was not foreseeable that Manriquez and Jones would devise a plan to push the car up the steep ramp to the next floor. Considering the evidence in support of the verdict, we conclude there is no evidence to support the jury's finding that Chaney's actions proximately caused Manriquez's injuries.

Thus, we sustain Pinkerton's third point of error. Because we may reverse the judgment of the trial court on either Pinkerton's first, second, or third point of error, it is not necessary to address Pinkerton's remaining points of error or Manriquez's sole point of error regarding damages.

Accordingly, we reverse the judgment of the trial court and render judgment that Manriquez take nothing on his claims against Pinkerton.

FOWLER, Justice, dissenting.

I respectfully dissent from the decision of my colleagues. In my opinion, this case presents two issues. The first issue is whether an employee of one independent contractor owes a "duty of ordinary care" to the employee of another independent contractor to prevent injury to the other through negligence.[1] The answer to this question is yes. The second issue is whether the negligence of the one independent contractor's employee proximately caused the injuries of the second independent contractor's employee. The answer to this question also is yes.

This case was tried to a jury which found for the plaintiff, Manriquez, on all issues, even though it found him contributorily neg-

---

1. *See Hernandez v. Heldenfels*, 374 S.W.2d 196, 199 (Tex.1963); *Harding v. Sinclair Pipeline Co.*, 480 S.W.2d 786, 792 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.); *Christian v. Dishongh*, 449 S.W.2d 823, 825–26 (Tex.Civ. App.—Houston [14th Dist.] 1970, no writ).

ligent. The jury awarded, in fact, almost three times the damages he pled.

Manriquez, along with Chaney, worked at the Regency Parking Garage. Their employers were the two independent contractors responsible for the daily operation of the garage. Manriquez's employer was responsible for the maintenance of the premises while Chaney's employer, Pinkerton, was responsible for safety and for staffing the cashier booths. On the morning of the accident, Manriquez and Chaney were at the garage by themselves when Chaney received a call from a customer that his car was stalled on the thirteenth floor. Chaney could not leave the cashier booth because customers were leaving the garage at the time, so he called out to Manriquez and told him "to assist a driver" on thirteen.[2] When Manriquez got to the thirteenth floor, he found the car stalled on the ramp pointing upward between the twelfth and thirteenth floors. Manriquez did not know that Chaney's employer, Pinkerton, had a tow truck specifically for dealing with cars stalled on ramps *and* required its employees to call headquarters in such an event. Pinkerton took these special precautions because it recognized the probability of injury if someone attempted to move a car stalled on a ramp. Not knowing this fact, Manriquez did what he was asked to do and so he and the owner of the car decided to move the car themselves. The owner concluded the conversation thinking they would move the car down the ramp; Manriquez, whose English was not always good, thought they were going to push the car *up* the ramp. When the owner put the car in neutral he was unable to keep the car from slamming Manriquez's fingers into a wall behind the car.

### The Question of Duty

The majority has held that no special relationship existed between Manriquez and Chaney. I agree with this conclusion. But, the majority also concludes that no duty ex-

isted between the two men. I disagree. At the risk of oversimplifying, in my opinion, the issue of duty in this appeal falls under a line of cases holding that employees of two independent contractors on a work site owe a duty of ordinary care to prevent injury to the other through negligence. For example, in *Hernandez,*[3] a Texas Supreme Court case, Hernandez, an employee of the owner of land was walking on an asphalt road being constructed on the land by a construction company, Heldenfels Brothers, when he was struck by one of Heldenfels's trucks loaded with asphalt. The court held that Heldenfels owed a duty not to injure Hernandez through its own negligence.[4] A second case probably more instructive is *Christian*[5] issued out of this court. Dishongh, an employee of one independent contractor on a work site, was injured while helping the employee of another independent contractor, Christian, rig pole trailers. Dishongh's superintendent had told Dishongh to help Christian's employee rig the trailers so they could be moved to allow other trailers to enter the property as quickly as possible.[6] In holding that Christian was liable for Dishongh's injuries even though Dishongh was not Christian's employee, the court held that (1) the two companies had the same objective "to unload ... pilings from the trucks and remove the trucks so that another truck might be brought in and be unloaded," and, more importantly, (2) Christian owed Dishongh a duty to prevent injury to him through its negligence.[7]

Admittedly, there is some distinction between the facts of *Christian* and *Hernandez* and this case in that the plaintiffs in those cases were directly and immediately injured by the negligent act of a co-independent contractor while in this appeal Manriquez was injured by Chaney's negligence in a more indirect way. But, the general proposition

---

**2.** Chaney disputes this version of the facts, claiming instead that he asked Manriquez to check out the situation and report back to him.

**3.** *See Hernandez,* 374 S.W.2d at 196.

**4.** *See id.* at 199.

**5.** *See Christian,* 449 S.W.2d at 823.

**6.** *See id.*

**7.** *See id.*

that an employee of one independent contractor owes a duty to prevent injury to the employee of another independent contractor through negligence remains intact despite the majority's contention that this court has retreated from the proposition in the recent case, *Rendleman v. Clark.*[8] On the contrary, the plaintiff in *Rendleman,* an employee of one subcontractor, *recovered from another subcontractor* based on its negligence. This court upheld the jury's verdict for the plaintiff, holding that the defendant/independent contractor's duty arose "from the duty of ordinary care at common law, based on its knowledge of the danger and the probability of injury."[9]

The duty of ordinary care at common law also was discussed in *Bennett v. Span Industries, Inc.,*[10] another case mentioned by the majority for the proposition that no special relationship existed between Chaney and Manriquez.

There was no special legal relationship between Span and Bennett which would in itself bring him within the scope of Span's duty, but the duty of ordinary care at common law may arise not only as a matter of legal relation, but it may also arise from a knowledge of the danger, which in turn depends upon the probability of injury. Prosser on Torts §§ 53 and 54, pp. 324 seq. (4th ed. 1971); 57 Am.Jur.2d Negligence § 36, pp. 382, 383 (1971). Whether or not there is a pre-existing privity in legal relationship between the actor and the person injured, if the circumstances are such that a person of ordinary common sense would recognize that if he did not exercise reasonable care in his conduct with regard to those circumstances, his acts would place another person in danger, the duty to use ordinary care to avoid such

danger arises. 57 Am.Jur.2d Negligence § 37, pp. 384, 385; § 57, p. 407 (1971), and cases cited. As Dean Prosser noted, the concept of duty has expanded to the point that in many cases, the mere knowledge of serious danger threatening physical harm to another, which one may avoid with little inconvenience, creates a sufficient relation, recognized by every moral and social standard, to impose a duty of care. Prosser on Torts § 56, p. 343 (4th ed.1971). Thus, the duty of care arises from the probability of injury to one who may reasonably be foreseen as likely to be subject to such injury. *See Carlisle v. J. Weingarten, Inc.,* 137 Tex. 220, 152 S.W.2d 1073 (1941); *Mohan v. Safeway Stores,* 237 S.W.2d 813 (Tex. Civ.App.—Waco 1951, no writ). "The risk reasonably to be perceived defines the duty to be obeyed; it is the risk, reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty." *United States v. Schultetus,* 277 F.2d 322 (5th Cir.1960), *cert. denied,* 364 U.S. 828, 81 S.Ct. 67, 5 L.Ed.2d 56 (1960); 57 Am.Jur.2d Negligence § 58, p. 409 (1971).[11]

The same reasoning applies here. Chaney knew a car was stalled and therefore knew it was a potentially dangerous situation. In fact, if the car was stalled on a ramp it would be considered an "emergency situation," to use Chaney's own words. Even knowing this fact, and knowing that the company required its employees not to touch cars stalled on a ramp and to call for the tow truck—Chaney nonetheless sent Manriquez to the thirteenth floor into a dangerous situation to help the motorist without giving Manriquez sufficient information or equipment to properly or safely handle the problem.[12] He thus failed to

---

**8.** 909 S.W.2d 56 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd as moot).

**9.** *Id.* at 60.

**10.** 628 S.W.2d 470 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.).

**11.** *Id.* at 473–74.

**12.** As I noted earlier, a fact issue exists on this issue because Chaney claimed he told Manriquez to check out the situation and report back to

him. Since the trial court found a duty existed, he must have resolved this issue in favor of Manriquez, and certainly the jury resolved this issue in favor of Manriquez. Whether we apply a legal or factual sufficiency review to this implied finding of the judge—we have no guidance as to which of these we are to apply, *see e.g. Central Power & Light Co. v. Romero,* 948 S.W.2d 764, 766 (Tex.App.—San Antonio 1996, n.w.h.)—sufficient evidence exists to support it. Consequently, I have used Manriquez's version of the facts on this question.

use ordinary care to prevent an injury to Manriquez when the probability of injury was great.[13]

We reach the same result if we ignore the line of cases stating a duty exists and apply the test set out in *Otis Engineering v. Clark*[14] and *Bird v. W.C.W.*,[15] to determine if a duty exists. Under this test, we weigh the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and the consequences of placing the burden on the employer.[16] The risk and likelihood of injury are great in a situation such as this one. As a matter of fact, no one disputed whether a car stalled on a ramp posed a serious threat of injury to anyone who attempted to move it. I also believe the foreseeability requirement has been met. Contrary to Pinkerton's claims, I think it quite foreseeable that a young man, who had been employed only a short while, and who had only a ninth grade education, would do what he could to help the stalled motorist—including moving a car stalled on an incline. In fact, I think most young men in their early twenties would think nothing of attempting to move a car on a ramp. That it might not have been the most *prudent* thing to do is an issue for contributory negligence,[17] not a reason to say that it was totally unforeseeable, as Pinkerton claims.[18] It also was foreseeable because it was in the best interests of Manriquez's employers for Manriquez to help Chaney when Chaney had no other help. In this regard, one wonders how Regency Garage or Manriquez's own employer would have viewed Manriquez if he had refused to help.

Regarding foreseeability, Pinkerton's suggests that it had no duty to foresee that Manriquez or anyone else would act negligently and try to move a stalled car up a ramp. However, it seems to me that Pinkerton *did* foresee that its employees might try

to move a stalled car on a ramp because it took great pains to forewarn its employees not to try to move a car stalled on a ramp and instead to call headquarters for a tow truck. If it was totally unforeseeable that anyone would try to move a car without special equipment, why the need to ensure that the employees knew they must call headquarters for a tow truck when a car was stalled on a ramp?

The other side of the equation does not meet these concerns. There was no overriding social utility in Chaney's actions other than to help a motorist. In addition, the burden on Pinkerton of guarding against the injury is minimal. Chaney could easily have said, "Go and see where the car is stalled. If it's on the ramp, don't touch the car, but call me and I'll get a tow truck sent over." Or, using Pinkerton's theory that Manriquez was under no obligation to help, Chaney could have left the stalled car there, told the motorist to wait, and called his headquarters to let them know that he could not take care of the problem immediately. Either solution places a minute burden on Pinkerton with either no or minimal consequences.

In summary then, I disagree with the majority's conclusion that no duty was owed. Chaney owed Manriquez a duty to prevent injury to Manriquez by Chaney's own negligence. By sending Manriquez into an admittedly dangerous situation without sufficient information or equipment, Chaney acted negligently and Manriquez was injured.

Before leaving the issue of duty, I feel compelled to discuss one aspect of the majority opinion and of Pinkerton's argument that troubles me. Whether intended or not, the opinion seems to imply, and Pinkerton seems to argue, that Pinkerton owed no duty because Manriquez's decision to place himself behind the car was utterly unimaginable and stupid. It seems to me that this position

**13.** *See id.*

**14.** 668 S.W.2d 307 (Tex.1983).

**15.** 868 S.W.2d 767 (Tex.1994).

**16.** *See Otis Engineering,* 668 S.W.2d at 309; *Bird,* 868 S.W.2d at 769.

**17.** *See* Tex. Civ. Prac. & Rem.Code Ann. § 33.001 et seq., in effect in 1991 when this injury occurred.

**18.** *See Bennett,* 628 S.W.2d at 474 (holding that even if the plaintiff is contributorily negligent, he is entitled to have his negligence compared with that of the defendants).

comes close to the "no duty doctrine" rejected by the Texas Supreme Court in *Parker v. Highland Park, Inc.*[19] and to voluntary assumption of the risk also abandoned in *Farley v. MM Cattle Co.*[20] The *Parker* court had this statement to make about the no duty doctrine.

> No duty, as thus explained, was said to defeat a plaintiff's action because a plaintiff's knowledge and appreciation of a danger cut off his action before reaching the issue about a defendant's negligence. As has been noticed before, the plaintiff's knowledge and appreciation are two elements which duplicate, overlap, and are segments of the voluntary assumption of risk doctrines which we abandoned in *Farley v. MM Cattle Company,* 529 S.W.2d 751 (Tex.1975). *Adam Dante Corporation v. Sharpe,* 483 S.W.2d 452, 457–58 (Tex. 1972).
>
> We now expressly abolish the so-called no-duty concept in this case and, as expressed in *Farley,* "henceforth in the trial of all actions based on negligence . . ." The reasonableness of an actor's conduct under the circumstances will be determined under principles of contributory negligence. While this case arose prior to the adoption of the comparative negligence statute, in the trial of cases under that statute, one who is contributorily negligent is still entitled to have his negligence compared with that of the other participants in the event.[21]

Regarding voluntary assumption of the risk, the *Farley* court said the following:

> We therefore hold that for this trial, and henceforth in the trial of all actions based on negligence, *volenti non fit injuria*—he who consents cannot receive an injury—or, as generally known, voluntary assumption of risk, will no longer be treated as an issue. Rather, the reasonableness of an actor's conduct in confronting a risk will be determined under principles of contributory negligence.[22]

Thus, whether Manriquez was solely responsible for his injuries because he chose to push the car was properly an issue for the jury in this case. And the jury did not find Manriquez solely responsible, it found him only 35% responsible for his injuries. This court cannot substitute its own opinion on this issue for the jury's.

### PROXIMATE CAUSE

#### Cause in Fact

Having concluded that Pinkerton owed Manriquez a duty, the next question is whether Pinkerton and/or Chaney proximately caused Manriquez's injuries. As noted by the majority, proximate cause consists of two elements: cause in fact and foreseeability. The majority concludes that Manriquez met neither element, but I disagree.

Regarding cause in fact, Chaney's actions were a substantial factor in bringing about Manriquez's injury because he asked Manriquez to assist the stranded motorist and failed to equip Manriquez with sufficient information to properly or safely assess and handle the situation. As discussed earlier, a car stalled on a ramp was considered an emergency requiring Chaney to contact his headquarters so a tow truck could be called. Instead of leaving Manriquez with the impression that he should not help the motorist if the car was stalled on a ramp, Chaney left Manriquez with the impression that he should help the motorist. There was no exception attached to the request. Thus, the connection between Chaney's actions and Manriquez's injuries are not too attenuated to constitute legal cause.[23] Chaney did more than provide a condition which made the injury possible. Chaney sent Manriquez into a dangerous situation without giving him sufficient information to protect himself.

This situation is not an attenuated connection like in *Lear Siegler.* In that case, the

**19.** 565 S.W.2d 512 (Tex.1978).

**20.** 529 S.W.2d 751 (Tex.1975).

**21.** *Parker,* 565 S.W.2d at 517.

**22.** *Farley,* 529 S.W.2d at 758.

**23.** *See Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 472 (Tex.1991); *Henry v. Houston Lighting & Power Co.,* 934 S.W.2d 748, 751–52 (Tex.App.— Houston [1st Dist.] 1996, no writ).

driver of a Texas Highway Department truck was killed while stopped to fix a malfunctioning flashing arrow he was pulling behind his truck when a driver of a van fell asleep and hit him. When the employee's family sued the manufacturer of the malfunctioning sign, the court said the company's product did no more than furnish the condition that made the plaintiff's injury possible.[24] The court also concluded that the "happenstance of place and time was too attenuated from the defendant's conduct for liability to be imposed."[25] In our case, we have no happenstance of time and place. Manriquez was sent to fix a problem that was dangerous, set about doing his task as asked, and was injured as a result.

In another case relied on by the majority and Pinkerton, *Union Pump Co. v. Allbritton*,[26] the plaintiff's injuries and the defendant's negligence were less connected than in the present case.[27] In *Union Pump*, the plaintiff, an employee of a chemical plant, assisted in putting out a fire started by an allegedly defective pump.[28] After the fire was under control, the employee fell and was injured while taking a short cut back to headquarters. Although a quicker way to get back to headquarters, the short cut also was more dangerous because it required the employee to walk on top of pipes in her fire gear. The employee sued the manufacturer of the pump alleging that the defective pump proximately caused her injuries.[29] The court held that even if the pump were in some sense a "but for" cause of the employee's injuries, it did nothing more than create a condition in which her injuries could occur. The fire had dissipated, there was no longer an emergency and so the employee did not need to use the short cut to leave the fire.[30] In our case, in contrast, the dangerous situation had not dissipated, Manriquez was sent to deal with it, and did so. That he may have been negligent in the way he handled the situation does not override the fact that Cha-ney's order to assist the motorist without further information was a substantial factor in bringing about Manriquez's injuries.

Pinkerton also argues that no proximate cause exists because Manriquez was a volunteer and did not have to help. I disagree with this argument in two respects. First, I do not see a connection between being a volunteer and proximate cause. That a person may have volunteered to do something has no bearing on whether the defendant's negligent conduct was a substantial factor in bringing about the plaintiff's harm. Thus, it does not really matter if Manriquez could have refused to do what Chaney told him to do. That fact does not absolve Chaney from having negligently placed Manriquez in a dangerous situation without the tools to deal with it. For example, the plaintiff in *Dishongh* did not have to help an employee of another subcontractor (Christian Brothers), but he did because it was in the best interests of his employer. And the court held Christian Brothers liable because Christian Brothers' employee failed to use reasonable care to prevent injury to Dishough.[31] Second, the record clearly shows that Manriquez did not feel that he could refuse. Helping a fellow worker advanced the garage owner's goal of having an efficiently run garage and thus theoretically was in the best interests of his employer. Additionally, since no one else was there who could help, he clearly was afraid that if he refused to help, it would jeopardize his job, which he had held only a few months. So, it is inaccurate not only to say that he was a volunteer, but also to argue that a volunteer can never be owed a duty even when the requester's negligence caused the injuries.

### Foreseeability

Having decided that Chaney was the cause in fact of Manriquez's injuries, the question again arises if it was foreseeable that Manri-

24. *See Lear Siegler,* 819 S.W.2d at 472.

25. *See id.*

26. 898 S.W.2d 773 (Tex.1995).

27. *See id.* at 776.

28. *See id.* at 774.

29. *See id.*

30. *See id.* at 776.

31. *See Dishongh,* 449 S.W.2d at 825.

quez, when confronted with a car stalled on a ramp would choose to try to move it up or down and thereby injure himself. As discussed earlier in more detail, considering Manriquez's age, social status, and short employment history with his employer, I think it quite foreseeable that Manriquez would try to move the car unless given sufficient instruction that he not do that. Thus, in my opinion Manriquez also established that Pinkerton's employee proximately caused his injuries.

*Summary*

The crux of Pinkerton's duty/proximate cause argument on appeal seems to be three-fold. First, Manriquez acted of his own volition to help Chaney and the motorist—it was not something he had to do. Second, Chaney only provided a condition and was not the cause in fact. Third, it is unimaginable that a reasonable person finding a car stalled on a ramp would try to move it. All three of these arguments fail. The cause in fact was Chaney's order: Manriquez was given a task without sufficient warning and he completed the task. That Manriquez may have completed the task in a different way than Chaney would have liked does not defeat the cause in fact, it impacts contributory negligence. Likewise, the other two arguments fail because they focus solely on Manriquez's actions and ignore Chaney's negligent conduct that sent Manriquez into a dangerous situation and partly caused Manriquez's injuries. The jury was responsible for deciding if Manriquez should get 100% of the blame for his injuries because he decided to push the car. And, contrary to Pinkerton's position, the jury apparently did not find it wholly unimaginable that Manriquez would try to push the car, because it assessed only 35% of the responsibility to him.

In short, I dissent because I (1) do not believe the trial court erred in determining that a duty was owed and proximate cause established, and (2) believe the verdict of the jury for Manriquez is supported by legally and factually sufficient evidence.