Jamie K. THOMAS, Plaintiff-Appellant,

v.

INTERNORTH, INC.,
Defendant-Appellee.

No. 85–1512.

United States Court of Appeals,
Fifth Circuit.

June 4, 1986.

James R. Warncke, James L. Branton, San Antonio, Tex., for plaintiff-appellant.

Charles Houlihan, Jr., San Antonio, Tex., for defendant-appellee.

---

Before WISDOM, RUBIN, and HIGGIN-BOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

After a jury had entered a verdict for the plaintiff in this personal-injury case, awarding him $750,000, the district court entered a judgment for the defendant, notwithstanding the verdict. The district court determined that the defendant, on whose premises the plaintiff, an employee of an independent contractor, was working when injured, had not violated any duty owed to the plaintiff. The record supports this determination and we, therefore, affirm.

## I.

James Thomas, the plaintiff, was employed by Midwest Inspection Services. Internorth, Inc., the defendant, had engaged a contractor to build a gas compression station, and, after the station was completed, it contracted with Midwest to conduct an "as-built" inspection of the station to confirm that it followed the plans and met the specifications of the construction contract. Midwest's charge was based on the number of persons assigned to the job. Internorth's representative, Howard F. Jenkins, Jr., therefore, instructed Midwest that only one person was needed to do the "as-built" inspection. Midwest dispatched Thomas to Internorth's premises to do the inspection job.

Although the testimony was contradictory, we accept the version most favorable to Thomas, as we must assume the jury did. In the course of his work, Thomas decided that he needed a ladder in order to get information from some overhead pipes. Thomas advised an Internorth su-

pervisor of this and asked for help. The supervisor told Thomas that Internorth's personnel were "pretty much tied up" and he should ask his superior at Midwest for such help as he needed. Because Internorth had refused to pay for a second Midwest employee, Thomas did the job alone. He obtained a 16-foot ladder from an Internorth employee but did not receive the safety belt he also requested. No Internorth employee held the ladder for Thomas, and, on the second day, Thomas used it, the ladder slipped, Thomas fell, and he was seriously injured.

## II.

Thomas contends that Internorth owed a duty to him to provide someone to hold the ladder, either by assigning an employee of its own to do so or by permitting Midwest, at Internorth's expense, to send an additional person. The district court, however, found that Internorth owed Thomas no such duty of care. Texas has long recognized that the owner of property owes a duty of care to the employee of an independent contractor retained to work on his premises if the property owner retains the right to control the manner in which the employees of the contractor do their work.[1] But, as the Texas Supreme Court said in *Redinger v. Living, Inc.*, shortly after the trial of the case, "The general rule is that an owner or occupier does not have a duty to see that an independent contractor performs work in a safe manner."[2] Only "when the [owner or] general contractor exercises some control over a subcontractor's work," may he be held liable for failure to exercise "reasonable care in supervising the work,"[3] stated the *Redinger* court, explicitly adopting the rule offered in the Restatement (Second) of Torts § 414.[4]

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

1. *See, e.g., Lathers v. Penguin Indus., Inc.,* 687 F.2d 69, 73 (5th Cir.1982).

2. 689 S.W.2d 415, 418 (Tex.1985).

3. *Id.*

4. The Restatement (Second) of Torts § 414 provides:

■ There was no evidence that Internorth had retained or exercised any supervisory control over the manner in which Midwest did its work. Thomas relies on four provisions of the contract between Internorth and Midwest to establish that Internorth did exert control over the manner in which his work was done. These provisions, however, do not suffice to support such a finding. The first two, which concern Midwest's obligation to furnish personnel and to perform the work when requested, are basic to all independent contractor relationships: the requirement to observe the same holidays is not a work-control issue. Internorth's right to reject Midwest personnel is a passive right of veto that protects Internorth's interests without involving it in the work process. And, as the Texas Supreme Court recognized in *Redinger*, the right to inspect, review and approve the work done is nothing more than the right to insure compliance with the contract.[5] There is no evidence that Internorth supervised Thomas' work or directed his work methods. Neither was there any evidence that Thomas' injury resulted from a defect in the premises.[6]

The third asserted basis of liability is that, because Internorth knew or should have known that Thomas' use of the ladder without assistance was hazardous, it had a duty to provide a second person to assist Thomas. Thomas attempted to establish this theory of recovery by showing that Internorth had an informal practice of requiring an extra employee to hold a ladder when in use. That basis for liability, however, has been rejected by the Texas Supreme Court, over the dissent of then Justices Reavley and Johnson, in *Abalos v. Oil Development Co. of Texas.*[7]

■ In *Abalos*, a subcontractor's employee was injured when his arms became entangled in the machinery of a motorized pump upon which the subcontractor's men were working. A general contractor's employee had helped to start the pump's motor, but had retreated from the scene after doing so. This employee had observed the danger Abalos was in but did not warn him until it was too late. The majority in *Abalos* found that Abalos could not recover from the general contractor. It reasoned that "where the activity is conducted by, and is under the control of, an independent contractor, and where the danger arises out of the activity staff, the responsibility or duty is that of the independent contractor, and not that of the owner of the premises."[8] Thus, under Texas law, Internorth's solicitude for the safety of its own employees does not require it to supervise its independent contractors. The owner of the premises does not have a duty to protect a contractor or its employees from hazards they themselves create in performing their contract.[9] The evidence did not show that Internorth assumed any supervisory control over Thomas or the manner in which he did his work. The provision of a ladder to Thomas by an Internorth employee simply does not satisfy the showing of control required. If Thomas needed additional help, it was up to Midwest to furnish it or to find a safe way to do the job within its budget. Even if Midwest's staff of one person was inadequate because Internorth refused to pay more for the work, Internorth did not assume a duty to the independent contractor's employees to protect them from the consequences of an inadequate staff.

### III.

Thomas' brief treats us to a discussion of the Texas "no-duty doctrine." The doctrine's relevance to this case, however, is in its name only. The similarity between the label for the Texas rule, which is related to the concept of assumption of risk, and the

---

5.  *Redinger,* 689 S.W.2d at 418.

6.  *Cf. Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425 (1950).

7.  544 S.W.2d 627 (Tex.1976).

8.  *Id.* at 631 (citing *Shell Chem. Co. v. Lamb,* 493 S.W.2d 742 (Tex.1973)).

9.  *Bryant v. Gulf Oil Corp.,* 694 S.W.2d 443 (Tex. Ct.App.1985).

district court's conclusion that Internorth had no duty of care to Thomas apparently created some confusion.

 The no-duty doctrine in Texas required a plaintiff who was injured on the premises of a defendant to prove not only that the owner had violated a legal duty to him, but also to negate his own knowledge and appreciation of the danger. In *Parker v. Highland Park, Inc.* [10] the Texas Supreme Court abolished the no-duty rule and held that the injured party had no duty to prove his freedom from contributory negligence. The abrogation of the no-duty rule does not relieve a plaintiff from proving that the defendant had a duty and breached it. [11] Thomas was required to prove Internorth owed him a legal duty of care arising out of the particular circumstances of this accident. [12] The district court recognized both Thomas' burden to prove such a duty and the narrow duty of care owed by an occupier of premises to its independent contractor. Internorth was entitled to judgment because Thomas failed to prove Internorth breached a legal duty of care.

For these reasons, the judgment is AFFIRMED.

---

**10.** 565 S.W.2d 512 (Tex.1978).

**11.** *See Dixon v. Van Waters and Rogers,* 682 S.W.2d 533 (Tex.1984).

**12.** *See Grover v. Gulf States Util. Co.,* 776 F.2d 517 (5th Cir.1985); *Bryant v. Gulf Oil Corp.,* 694 S.W.2d 443 (Tex.Ct.App.1985).