# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———

United States Court of Appeals
Fifth Circuit

**FILED**

March 21, 2014

Lyle W. Cayce
Clerk

No. 12-10772

———

RANDY J. AUSTIN,

Plaintiff–Appellant,

v.

KROGER TEXAS L.P., doing business as Kroger Store #209,

Defendant–Appellee.

———

Appeal from the United States District Court
for the Northern District of Texas

———

Before ELROD and HIGGINSON, Circuit Judges, and JACKSON, District Judge.[*]

PER CURIAM:

The original opinion in this matter was filed on September 27, 2013. *Austin v. Kroger Texas L.P.*, 731 F.3d 418 (5th Cir. 2013). A petition for rehearing *en banc* is currently pending before the court. We deny the petition, withdraw our previous opinion, and substitute the following.

Randy J. Austin asserts three claims—gross negligence, ordinary negligence, and premises liability—for injuries that he sustained when he fell cleaning a spill on property owned by Kroger Texas, L.P. ("Kroger"). The district court granted summary judgment to Kroger on all claims. For the

---

[*] Chief Judge of the Middle District of Louisiana, sitting by designation.

No. 12-10772

reasons that follow, we affirm the district court's judgment as to the gross negligence claim and reverse and remand as to the ordinary negligence claim. Because the premises liability claim involves arguably unsettled state law questions regarding the nature and extent of Kroger's duty to provide a safe workplace, we decline to make an *Erie* guess and instead certify a question to the Texas Supreme Court.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS,
PURSUANT TO ART. 5, § 3-C OF THE TEXAS CONSTITUTION AND
RULE 58 OF THE TEXAS RULES OF APPELLATE PROCEDURE
TO THE SUPREME COURT OF TEXAS
AND THE HONORABLE JUSTICES THEREOF:

## I.    STYLE OF THE CASE

The style of the case is Randy J. Austin, Plaintiff–Appellant, v. Kroger Texas L.P., doing business as Kroger Store #209, Defendant–Appellee, Case No. 12-10772, in the United States Court of Appeals for the Fifth Circuit, on appeal from the judgment of the United States District Court for the Northern District of Texas, Dallas Division.   Federal jurisdiction over the issues presented in the case is based on 28 U.S.C. § 1332.

## II.    STATEMENT OF THE CASE

Austin was a long-time Kroger employee.  Beginning in 1997, Austin served in various maintenance positions.  In 2008, he became a "utility clerk" or "floor clean-up person" at the Kroger store in Mesquite, Texas.  His duties included sweeping, mopping, sacking groceries, consolidating carts, and cleaning the store's restrooms.  On the morning of July 27, 2009, Kroger management decided to perform an annual cleaning of the store's condenser units, housed on the roof or "mezzanine level" of the building.   Kroger employees, including Kroger's in-house mechanic, power-washed the

2

condensers with water and cleaning solvent for about twenty minutes. As a result, a dirty brown liquid pooled on the mezzanine floor. Because the room that contained the condensers had no drain to divert the liquid, some of the fluid leaked into the ventilation ducts that opened into the downstairs restrooms.

That same morning, Kroger asked Austin, a night-shift employee, to report to work to cover for an absent colleague. When he arrived, a Kroger employee informed Austin about the compressor cleaning and asked him to be prepared to clean up "whatever mess" it made.

Austin inspected the restrooms in accordance with his normal routine. At about 9:45 in the morning, he discovered a small puddle of brown, oily liquid in the women's restroom. Kroger's Safety Handbook provided that store management should "make certain that the Spill Magic Spill Response Stations [were] adequately supplied at all times" and available in numerous places throughout the store. Spill Magic allows an employee to clean a liquid spill with a broom and dustpan, and—according to Kroger's Safety Handbook—reduces the likelihood of a slip-and-fall by 25 percent. Because there was no Spill Magic on premises that day, Austin cleaned the spill with a dry mop instead. When Austin moved on to the men's restroom, he saw that the same substance covered about 80 percent of the floor. Austin placed "Wet Floor" signs inside and outside of the room, and proceeded to mop the spill for about thirty to thirty-five minutes. Austin took "baby steps" in and out of the restroom to change out the mop head numerous times, and successfully removed about thirty to forty percent of the liquid.

At about 10:30 a.m., while continuing to remedy the spill, Austin fell. He sustained a left femur fracture and severely dislocated his hip. He spent nine

No. 12-10772

months in the hospital and underwent six surgeries, and his left leg is now two inches shorter than his right.

Austin filed suit in Texas state court, asserting ordinary negligence, gross negligence, and premises liability claims against Kroger, a non-subscriber to the Texas workers' compensation system. Kroger removed on the basis of diversity jurisdiction, and subsequently moved for summary judgment. The district court granted Kroger's motion—largely based on Austin's subjective awareness of the risk the spill presented—and dismissed Austin's claims with prejudice.[1] Austin timely appealed.

### III. LEGAL ISSUES

Texas law governs in this diversity suit. To determine Texas law, this court looks first to the final decisions of the Texas Supreme Court. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). In the absence of a definite pronouncement from the Texas Supreme Court on an issue, we may certify a question to the Texas Supreme Court. Under Texas law, "[t]he Supreme Court of Texas may answer questions of law certified to it by any federal appellate court if the certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent." Tex. R. App. P. 58.1; *see also* Tex. Const. art. V, § 3-c(a).

### A.

Before reaching the question to be certified, we turn first to the two claims on which we have reached final decisions: gross negligence and ordinary negligence. As to Austin's gross negligence claim, we agree with the district

---

[1] Specifically, the district court concluded that, "[g]iven that Austin was aware of the risk that he faced when mopping the spill, and in fact acted to inform others that the men's bathroom was wet," "no reasonable jury could infer that" Kroger owed Austin a duty.

4

No. 12-10772

court's disposition.[2] We therefore AFFIRM the district court's dismissal of the gross negligence claim.

Austin asserts two different theories—negligent activity and failure to provide necessary instrumentalities—in support of his ordinary negligence claim. We address negligent activity first. Although negligent activity and premises liability claims are branches of the same tree, they are conceptually distinct: "[N]egligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Del Lago*, 307 S.W.3d at 776 (footnote omitted). Thus, the Texas Supreme Court has repeatedly declined to "eliminate all distinction" between these two theories. *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). Distinguishing between these two causes of action can be tricky: "The lines between negligent activity and premises liability are sometimes unclear, since almost every artificial condition can be said to have been created by an activity." *Del Lago*, 307 S.W.3d at 776 (internal quotation marks omitted).

Here, we agree with the district court that Austin's "injuries are properly conceived as resulting from a condition on the premises rather than an ongoing

---

[2] To recover for gross negligence in Texas, a plaintiff must satisfy the elements of an ordinary negligence or premises liability claim *and* demonstrate clear and convincing evidence of "an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others." *State v. Shumake*, 199 S.W.3d 279, 286 (Tex. 2006) (citations omitted). Extreme risk is "is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). The district court rejected Austin's gross negligence claim because, based on the evidence Austin proffered, "no reasonable juror could conclude that Kroger was consciously indifferent to the safety of its employees, or that he faced an extreme risk in performing a job he had done safely for years." Considering the high evidentiary standard that applies to gross negligence claims, the district court did not err in dismissing Austin's gross negligence claim.

activity." As in *Keetch*, Austin slipped on an oily substance on the floor; while he "may have been injured by a condition created by the [condenser unit] spraying," the "spraying itself" was not the source of his injury. *See Keetch*, 845 S.W.2d at 264. Especially considering that many Texas courts have taken a similar approach, *see, e.g.*, *Simon*, 2008 WL 2309295, at *2 (upholding dismissal of a plaintiff's ordinary negligence claim, explaining that it sounded in premises liability because the plaintiff's allegations focused on "the substance on the floor on which she allegedly slipped"); *see also Reinicke v. Aeroground, Inc.*, 167 S.W.3d 385, 388 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (reversing a jury verdict where the plaintiff's allegations were best characterized as a premises liability claim, but the trial court submitted an ordinary negligence charge to the jury), we conclude that Austin cannot pursue *both* a negligent activity and a premises defect theory of recovery based on the same injury.

We now turn to Austin's second theory in support of his ordinary negligence claim. The district court failed to consider whether Austin could pursue an ordinary negligence claim based on his theory that Kroger was negligent by failing to provide him with a necessary instrumentality—i.e., Spill Magic. Thus, we REVERSE and REMAND the ordinary negligence claim in order to allow the district court to consider in the first instance whether Austin's necessary instrumentalities theory is sufficient to support a stand-alone ordinary negligence claim. Accordingly, the only question that remains is the one regarding Austin's premises liability claim.

**B.**

We are persuaded that certification of the premises liability claim is the best approach, as there is arguably conflicting Texas Supreme Court precedent. As a matter of discipline, we survey the Texas law in this area "both

No. 12-10772

to explain our uncertainty and assure that we seek certification only when necessary." *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986). "We do not presume to instruct in our explanation but to explain our difficulty and allow the only court empowered finally to state the law, to do so." *Id.*

The starting point for our analysis is the Texas Workers' Compensation Act (the "TWCA"), which effects the scope of both Austin's claims and Kroger's defenses.

> The workers' compensation act was adopted to provide prompt remuneration to employees who sustain injuries in the course and scope of their employment. . . . The act relieves employees of the burden of proving their employer's negligence, and instead provides timely compensation for injuries sustained on-the-job. . . . In exchange for this prompt recovery, the act prohibits an employee from seeking common-law remedies from his employer, as well as his employer's agents, servants, and employees, for personal injuries sustained in the course and scope of his employment.

*Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 142 (Tex. 2003). By participating in a workers' compensation scheme, "employers gain immunity from tort actions that might yield damages many times higher than awards payable under workers' compensation schedules." *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006); *see HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 358 (Tex. 2009) (discussing the balance achieved by the Texas workers' compensation system).

Texas allows employers to opt out of its workers' compensation program. Tex. Lab. Code § 406.002(a). "But the state makes that choice an unattractive one." *Hook v. Morrison Milling Co.*, 38 F.3d 776, 778 (5th Cir. 1994). The TWCA vests employees of non-subscribing employers with the right to sue their employers for work-related injuries or death. *Id.*; *see* Tex. Labor Code § 406.033(a). In such an action, the TWCA deprives a non-subscribing

7

employer of the right to raise certain defenses, including contributory negligence, assumption of the risk, and the fellow-servant rule.  Tex. Labor Code § 406.033(a)(1)–(3); *see also Kroger Co. v. Keng*, 23 S.W.3d 347, 352 (Tex. 2000) ("[A] non-subscribing employer is not entitled to a jury question on its employee's alleged comparative responsibility.").    The Texas workers' compensation program therefore contemplates two systems—"one in which covered employees may recover relatively quickly and without litigation from subscribing employers and the other in which non-subscribing employers . . . are subject to suit by injured employees to recover for their on-the-job injuries." *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 187 (Tex. 2012).

While there is a bias in favor of workers' compensation coverage, the TWCA does not create an "especially punitive litigation regime for non-subscribing employers."  *Id.* at 192.  As this court recognized in *Rentech Steel*, a non-subscribing employer has no automatic obligation to compensate its injured employee.  620 F.3d at 565.  An employee must prove the elements of his negligence or other claim just as any other litigant, subject to the parameters of section 406.033(d) of the Texas Labor Code.  *Id.*  In other words, section 406.033(a)(1)–(3) may limit an employer's defenses, but it does not eliminate an employee's burden to establish his common law claim.  *See Rentech Steel*, 620 F.3d at 565; *see also Tex. W. Oaks*, 371 S.W.3d at 187.

### C.

With this framework in mind, we recognize that the first step in evaluating Austin's premises liability claim is determining the nature and scope of Kroger's duty.  *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex. 2008) ("Like any other negligence action, a defendant in a premises case is liable only to the extent it owes the plaintiff a legal duty.").  Whether a duty exists "is a question of law for the court and turns 'on a legal analysis balancing

a number of factors, including the risk, foreseeability, and likelihood of injury, and the consequences of placing the burden on the defendant.'" *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010) (quoting *Moritz*, 257 S.W.3d at 218).

In premises liability cases, "the scope of the duty turns on the plaintiff's status." *Del Lago*, 307 S.W.3d at 765. An employee is essentially the invitee of her employer. *Hernandez v. Heldenfels*, 374 S.W.2d 196, 197 (Tex. 1963); *Allen v. Connolly*, 158 S.W.3d 61, 65 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The Texas Supreme Court has emphasized that an employer's duty to his employees, although distinct, may be identical "in all material respects" to a landowner's duty "to use reasonable care to make his premises reasonably safe for the use of his invitees." *Sears, Roebuck & Co. v. Robinson*, 280 S.W.2d 238, 240 (Tex. 1955).[3]

In the employment context, the Texas Supreme Court has repeatedly held that an employer owes a continuous, non-delegable duty to provide its employees with a safe workplace. *See*, *e.g.*, *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006); *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). The

---

[3] Although the "two fields of law (landowners-invitee and master-servant) are entirely separate," *Sears, Roebuck*, 280 S.W.2d at 240, Texas courts generally apply premises-liability principles in suits by injured employees. *See*, *e.g.*, *Leal v. McDonald's Corp.*, No. 03-05-00500-CV, 2009 WL 2410853, *4 (Tex. App.—Austin Aug. 5, 2009, no pet.) (unpublished but persuasive) ("Employers owe their employees the same duty of care that premises owners owe invitees." (citing *Allen v. Connolly*, 158 S.W.3d 61, 65–66 (Tex. App.—Houston [14th Dist.] 2005, no pet.))); *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 644 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (applying standard elements of a premises liability claim to a non-subscriber case); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 71 (Tex. App.—Austin 1998, no pet.) (same). In the employment context, Texas courts first look to the employer's duty to provide a safe workplace in assessing a plaintiff's claim. *See Del Lago*, 307 S.W.3d at 767; *Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 461 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

nature and scope of this general duty is arguably unclear, however, when an employee is aware of the hazard or risk at issue.[4]

### 1.

For decades, Texas maintained a "no duty rule" in premises liability cases. *See Sears, Roebuck*, 280 S.W.2d at 240 (describing the "no duty rule"). The "no duty rule" provided that a landowner owed no duty to remedy known and obvious dangers on a premises. *Id.* Accordingly, the rule required a plaintiff to negate his own knowledge and appreciation of the danger as a prerequisite to recovery. *See Halepeska v. Callihan Interests, Inc.*, 371 S.W.2d 368, 378–79 (Tex. 1963), *abrogated by Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978); *see also Thomas v. Internorth, Inc.*, 790 F.2d 1253, 1256 (5th Cir. 1986) (explaining the Texas "no duty rule").[5] The Texas Supreme Court explained the "no duty" rule in *Halepeska* in helpful detail:

> The "no duty" doctrine is this: the occupier of land or premises is required to keep his land or premises in a reasonably safe condition for his invitees. This includes a duty of the occupier to inspect and to discover dangerous conditions. His duty is to protect his invitees from dangers of which he, the occupier, knows,

---

[4] There is no genuine dispute that Austin was aware that the spill posed a risk. He set out three Wet Floor signs, took baby steps in and around the spill, and understood that the substance on the floor was slick and oily. Although Austin contends that this spill was of a different nature and volume than those he regularly cleaned, he does not argue that the size of the spill was unknown to him at the time of the incident. In addition, Austin does not contest his knowledge that Kroger encouraged its employees to use Spill Magic and that Spill Magic was unavailable on the day of his injury.

[5] At oral argument, Kroger asserted for the first time that our decision in *Internorth* resolves this case. It does not. It arises in a different context, and—in relevant part—merely restates the non-controversial principle that the "abrogation of the no-duty rule does not relieve a plaintiff from proving that the defendant had a duty and breached it." *Internorth*, 790 F.2d at 1256; *see Dixon v. Van Waters & Rogers*, 682 S.W.2d 533–34 (Tex. 1984) ("[*Parker*'s] rule that the plaintiff does not have the burden to obtain findings that disprove his own fault does not, however, mean that a plaintiff is excused from proving the defendant had a duty and breached it.").

or (because of his duty to inspect) of which he should know in the exercise of ordinary care. If there are dangers which are not open and obvious, he is under a duty to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof. *But if there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then the occupier owes them 'no duty' to warn or to protect the invitees.* This is so, the cases say, because there is "no duty" to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof. . . .

So in a suit by an invitee against the occupier, the invitee must not only prove that he was injured as a proximate result of encountering a condition on the premises involving an unreasonable risk of harm, *but he must also prove, as part of the plaintiff's case, that the occupier owed him a duty to take reasonable precautions to warn him or protect him from such danger, i.e., the plaintiff must negative "no duty."* This is the 'no duty' referred to in the cases.

371 S.W.2d at 378–79 (emphasis added) (citations omitted).

Although employees are the invitees of their employers, the Texas Supreme Court declined to apply the "no duty rule" in the employment context, as doing so would "defeat and nullify" the "obvious and clearly expressed intention of the Legislature" to (1) eliminate a non-subscribing employer's assumption-of-the-risk defense, and (2) "make him liable where he created or failed to correct an unsafe condition of the premises on which his servant was compelled to work." *Sears, Roebuck*, 280 S.W.2d at 240.

More than twenty years after *Sears, Roebuck*, the Texas Supreme Court abolished the "no duty rule" altogether in premises liability cases. Calling the rule "harsh," the Court explained that it caused unnecessary confusion and duplicated the voluntary-assumption-of-risk defense. *Parker*, 565 S.W.2d at 518. The Court further explained that there are "many instances in which a

person of ordinary prudence may prudently take a risk about which he knows, or has been warned about, or that is open and obvious to him. [His] conduct under those circumstances is a matter which bears upon his own contributory negligence." *Id.* at 520.    Thus, the Court concluded that "a plaintiff's knowledge, whether it is derived from a warning or from the facts, even if the facts display the danger openly and obviously, *is a matter that bears upon his own negligence*; *it should not affect the defendant's duty*." *Id.* at 521 (emphasis added).  In other words, a "plaintiff may be contributorily negligent as a matter of law by reason of his conduct after he possesses knowledge of the condition." *Id.*

Viewed in tandem, *Sears, Roebuck* and *Parker* suggest that a non-subscribing employer cannot escape liability as a consequence of its employee's knowledge of the risk at issue.  That is because the employee's subjective awareness of the hazard is relevant only to comparative negligence or assumption-of-the-risk—affirmative defenses unavailable to non-subscribers under Section 406.033(a) of the Texas Labor Code.

**2.**

But the analysis may not be so straightforward.  Kroger argues that, without expressly overruling *Sears, Roebuck* or *Parker*, the Texas Supreme Court has recently returned to the principle that an employer owes no duty to warn or maintain a safe workplace in the context of an open or obvious danger. It cites a line of recent cases in which the Texas Supreme Court appears to have pulled back on the abolition of the "no duty rule" in the employer/employee context—*Elwood*, 197 S.W.3d at 795, *Jack in the Box, Inc. v. Skiles*, 221 S.W.3d 566, 569 (Tex. 2007), *Brookshire Grocery Co. v. Goss*, 262 S.W.3d 793, 794 (Tex. 2008), and *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 413 (Tex. 2009).

No. 12-10772

*Elwood*, *Skiles*, *Goss*, and *Escoto* emphasize that (1) an employer owes *no duty* to "warn of hazards that are commonly known or already appreciated by the employee" or "provide equipment or assistance that is unnecessary to the job's safe performance" and (2) "when an employee's injury results from performing the same character of work that employees in that position have always done, an employer is not liable if there is no evidence that the work is unusually precarious." *Elwood*, 197 S.W.3d at 795; *see Goss*, 262 S.W.3d at 794; *Skiles*, 221 S.W.3d at 569; *cf. Escoto*, 288 S.W.3d at 413.[6]

The facts of *Elwood* are instructive. There, a plaintiff suffered injury when a Kroger customer shut her vehicle door on his hand while he was loading her car with groceries. The employee had placed one hand in the doorjamb of the vehicle and one foot on the grocery cart to keep it from rolling down a slope in the Kroger parking lot. *Elwood*, 197 S.W.3d at 794. The plaintiff alleged that Kroger had "provided inadequate training on how to maneuver carts on a sloped parking lot, never advised that he should take a second clerk with him to the sloped portion of the lot, and provided no explanation on how to avoid injury when loading groceries into customers' vehicles." *Id.* The plaintiff further alleged that Kroger should have provided carts with locking wheels or wheel blocks. *Id.* A jury found Kroger liable for the plaintiff's injuries, but also concluded that the plaintiff was contributorily negligent by 40 percent.

---

[6] *See also Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 412–13 (Tex. 2009) (holding that a Texas employer owed no duty to protect third parties by training its employees, especially inexperienced employees, regarding the dangers of fatigue, as that danger was well known); *Moritz*, 257 S.W.3d at 216 (holding that a landowner need not warn an independent contractor's employees of known, obvious hazards); *Aleman v. Ben E. Keith Co.*, 227 S.W.3d 304, 311 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Jurasin v. Dillon Res., Inc.*, No. 04-12-00202-CV, 2012 WL 5416212, at *1 (Tex. App.—San Antonio Nov. 7, 2012, no pet.) (unpublished but persuasive); *SSHG, LLC v. Lewis*, No. 10-07-00064-CV, 2008 WL 4172667, at *3 (Tex. App.—Waco Sept. 10, 2008, pet. denied) (unpublished but persuasive).

No. 12-10772

Because Kroger, a non-subscribing employer, could not assert contributory negligence by virtue of 406.033(a)(1)–(3) of the Texas Labor Code, the trial court reformed the judgment to award the plaintiff 100 percent of the total damages.

The Texas Supreme Court reversed, emphasizing the plaintiff's trial testimony that, "prior to working at Kroger, he knew it was dangerous to place his hand in a vehicle's doorjamb." *Id.* at 795.[7] The Court also explained that there was no evidence that safe grocery-loading required carts with wheel locks or additional personnel. *Id.* Thus, the Court concluded that the plaintiff could not recover because "Kroger had no duty to warn Elwood of a danger known to all and no obligation to provide training or equipment to dissuade an employee from using a vehicle doorjamb for leverage." *Id.* at 795.

Since *Elwood*, the Texas Supreme Court has taken the same approach in other employer/employee cases. In *Skiles*, the Texas Supreme Court rendered a take-nothing judgment against an employee who suffered injury when he used a ladder to climb over a non-functioning lift gate to obtain supplies for his employer. 221 S.W.3d at 568. The Court emphasized that "the dangers associated with the use of a ladder to climb over a lift gate are common and obvious to anyone" and, therefore, "Jack in the Box owed no duty to warn Skiles of the danger posed by his intended use of the ladder." *Id.* at 569. Then,

---

[7] Austin argues that *Elwood* and its progeny focus on whether a particular hazard was *known to all,* not known to the individual plaintiff at issue. *Elwood*, 197 S.W.3d at 794. *See also Goss*, 262 S.W.3d at 795 ("To the extent that stepping over a [cart] is dangerous, it is a danger apparent to anyone."); *Skiles*, 221 S.W.3d at 569 ("The dangers associated with the use of a ladder to climb over a lift gate are common and obvious to anyone . . . ."). This argument is difficult to square with *Elwood*'s emphasis that the plaintiff *himself* "knew it was dangerous to place his hand in a vehicle's doorjamb," *Elwood*, 197 S.W.3d at 795, and *Goss*'s statement "an employer owes no duty to warn of hazards commonly known *or already appreciated by the employee*," 262 S.W.3d at 794 (emphasis added).

14

in *Goss*, the Texas Supreme Court rejected a plaintiff's claim that his employer failed to adequately warn him about the risks of maneuvering around lowboy carts. 262 S.W.3d at 794–95. The Court analyzed the plaintiff's knowledge in the context of duty, not comparative responsibility or assumption-of-the-risk:

> [L]ike avoiding sticking one's hand in a door, stepping over a cart is a risk commonly known to anyone." The court of appeals couched Brookshire's argument as an "assumption of the risk" defense no longer available in Texas. But duty is not an affirmative defense. Rather, it "depends on a legal analysis balancing a number of factors, including the risk, foreseeability, and likelihood of injury, and the consequences of placing the burden on the defendant," and is an essential element to liability.

*Id.* at 795 (internal citations omitted). Finally, in *Escoto*, the Texas Supreme Court declined to impose a "duty to train employees regarding the commonly-known dangers of driving while fatigued." *Escoto*, 288 S.W.3d at 413.

**3.**

Austin distinguishes *Elwood*, *Skiles*, and *Goss* by noting that they arose in the context of negligent activity, not premises defect, claims.[8] *See Elwood*, 197 S.W.3d at 794; *Skiles*, 221 S.W.3d at 567; *Goss*, 262 S.W.3d at 794[9]; *Cf.*

---

[8] Although negligent activity and premises defect are branches of the same tree, they are conceptually distinct claims: "negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Del Lago*, 307 S.W.3d at 776.

[9] At oral argument, Kroger argued that *Goss* is, in fact, a premises-defect case. But as the Texarkana Court of Appeals explained: "Goss elected to submit only the general negligence form of the cause of action and urged that the premises liability form of negligence should not be submitted to the jury." *Brookshire Grocery Co. v. Goss*, 208 S.W.3d 706, 718 (Tex. App.—Texarkana 2006), *rev'd on other grounds*, 262 S.W.3d 793 (Tex. 2008). Thus, "Goss abandoned pursuit of any action that she might have based on premises liability and placed her entire theory of recovery on the form of negligence involving a breach of a duty that an employer owes to an employee." *Id.*

*Keetch*, 845 S.W.2d at 264 (articulating the distinction between negligent activity and premises defect claims).[10]  This distinction has some persuasive force, especially in light of the Texas Supreme Court's recent decision in *Del Lago*, a premises-defect case decided after *Elwood* and its progeny.  There, a third-party patron plaintiff filed suit after he suffered injury in a bar fight.  307 S.W.3d at 764–65.  Characterizing the plaintiff's claim as one for premises defect (based on insufficient security at the property), the Court concluded that there was legally sufficient evidence to support the jury's allocation of fifty-one percent negligence to the premises owner and forty-nine percent to the plaintiff.  *Id.* at 767.  Justice Willett, writing for the majority, emphasized the abolition of the no-duty rule in premises liability cases:

> A plaintiff's appreciation of and voluntary exposure to a dangerous on-premises risk is something the jury can weigh when apportioning responsibility, as was done in this case.
>
> Further, we have expressly abolished a "no-duty" doctrine previously applicable to open and obvious dangers known to the invitee. Instead, a plaintiff's knowledge of a dangerous condition is relevant to determining his comparative negligence but does not operate as a complete bar to recovery as a matter of law by relieving the defendant of its duty to reduce or eliminate the unreasonable risk of harm. *A plaintiff's knowledge, whether it is derived from a warning or from the facts, even if the facts display the danger openly and obviously, is a matter that bears upon his own negligence; it should not affect the defendant's duty.* While presented in terms of a no-negligence or no-causation analysis, Justice Johnson's view would in effect revive the no-duty rule rejected by statute and caselaw, and hold as a matter of law that an invitee's decision not to remove himself from a known and dangerous premises condition bars any recovery against the landowner.

---

[10] *Escoto* involved an injury that occurred not on the employer's premises, but rather with the employer's vehicle.  Thus, it does not squarely align with *Elwood*, *Skiles*, and *Goss* in this respect.  *See Escoto*, 288 S.W.3d at 403–04.

*Id.* at 772–73 (emphasis added) (citations and internal quotation marks omitted).[11]  Thus, *Del Lago* takes a different approach than *Elwood* and its progeny.  At least in the context of third-party premises-defect claims, *Del Lago* affirms that *Parker*—along with its abolition of the "no-duty rule"—remains good law.  But because *Del Lago* does not arise in the employer/employee context, its application to Austin's claims is arguably unsettled.[12]

We thus perceive some tension here.[13]  Like the plaintiff in *Elwood*, Austin suffered an injury while performing the job he was assigned to do, with

---

[11] In dissent, Justice Johnson, joined by Justice Hecht, emphasized that "[t]he purpose of requiring premises occupiers to warn invitees of unreasonably dangerous conditions" is to provide the invitee with sufficient information to decide "(1) whether to come onto or remain on the premises, accept the risk of harm posed by the condition, and take action to avoid or protect himself from the risk or (2) refuse to accept the risk by either not coming onto the premises or by leaving."  *Id.* at 783 (Johnson, J., dissenting) (citation omitted).  Because the plaintiff in *Del Lago* was aware of the dangers at issue, Justice Johnson would have held that the premises owner did not breach its duty as a matter of law.  *Id.* at 784. ("It is contrary to both common sense and logic to impose liability on Del Lago because its employees did not warn Smith during the evening that 'members of Sigma Chi and a wedding party are drinking, acting belligerently toward and threatening each other,' or take similar action when, according to Smith's own testimony, he knew as much as the warning would have conveyed.").  He reasoned that "[p]arties should be held liable in tort because they did or failed to do something substantive that caused injury to another, not because they performed or failed to perform meaningless acts."  *Id.*

[12] Although master-servant law is a distinct body of precedent, Kroger does not articulate a cogent reason that *Del Lago* would not apply to employee-invitees.  As Kroger itself asserts, "Texas state courts routinely analyze employee slips and falls under premises-liability law."

[13] *Moritz*, 257 S.W.3d at 216–18, adds an additional layer of complexity.  There, the Court held that a landowner has no duty to warn the employees of an independent contractor about open or obvious hazards.  The Court noted that, in this context, "[a]n independent contractor owes its own employees a non-delegable duty to provide them a safe place to work, safe equipment to work with, and warn them of potential hazards; it also controls the details and methods of its own work, including the labor and equipment employed." 257 S.W.3d at 215.  The Court further noted that "one who hires an independent contractor generally expects the contractor to take into account any open and obvious premises defects in deciding how the work should be done, what equipment to use in doing it, and whether its workers need any warnings."  *Id.* at 215–16.  Thus, [p]lacing the duty on an independent contractor to warn its own employees or make safe open and obvious defects ensures that the party with

at least some knowledge of the risks involved. But like the plaintiff in *Del Lago*, Austin's injuries arose from a defect on the premises, not an activity.

Given the arguable conflict in Texas law between the *Sears, Roebuck*, *Parker*, and *Del Lago* line of cases and the *Elwood*, *Skiles*, *Goss*, and *Escoto* line of cases, we conclude that certification is appropriate in this factual context. As the Texas Supreme Court suggested in *Escoto*, the nature and scope of an employer's duty "involves complex considerations of public policy including 'social, economic, and political questions and their application to the facts at hand.'" 288 S.W.3d at 410 (quoting *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 182 (Tex. 2004). It is best to leave the resolution of these matters to the good judgment of the highest state court. *See Ewing Const. Co., Inc. v. Amerisure Ins. Co.*, 690 F.3d 628, 632–33 (5th Cir. 2012) (certified question accepted Aug. 24, 2012) ("Where state law governs an issue, such policy factors are better gauged by the state high court than by a federal court on an Erie guess."). We therefore request that the Texas Supreme Court address and answer the question that we certify below.

---

the duty is the one with the ability to carry it out." *Id.* at 216. This implies that an employer, unlike a landowner who hires an independent contractor, owes its employees a duty to warn of even obvious premises defects. *Id.*

In dissent, Justice Green criticized the *Moritz* Court for breathing life into the "no duty" rule by "simply changing the question." *Id.* at 222 (Green, J., dissenting). "That is, when the answer to 'Was the defect concealed?' is 'No,' the answer to 'Did the plaintiff know/Should the plaintiff have known of the defect?' will always be 'Yes.'" *Id.* According to Justice Green, "[t]he Court's reasoning essentially overrules *Parker* by reducing its holding to a requirement that, in determining duty, courts ask the former question instead of the latter. But this cannot be because *Parker* removed both of those questions from duty analysis." *Id.* The *Moritz* majority rejected this proposition, emphasizing that the independent contractor, not the landowner, owed the duty to warn. *Id.* at 216–17. It explained: "It is true that when a hazard is obvious, the plaintiff will usually know about it. But that does not mean the plaintiff is negligent, as some . . . must encounter a hazard because they have no other choice." *Id.* at 218.

18

No. 12-10772

## IV.   QUESTION CERTIFIED

For the reasons explained above, we certify the following questions to the Texas Supreme Court:

> Pursuant to Texas law, including § 406.033(a)(1)–(3) of the Texas Labor Code, can an employee recover against a non-subscribing employer for an injury caused by a premises defect of which he was fully aware but that his job duties required him to remedy?  Put differently, does the employee's awareness of the defect eliminate the employer's duty to maintain a safe workplace?

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified.