## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 3, 2018

Lyle W. Cayce
Clerk

No. 17-10349

AUTOBAHN IMPORTS, L.P., doing business as Land Rover of Fort Worth,

> Plaintiff - Appellee

v.

JAGUAR LAND ROVER NORTH AMERICA, L.L.C.,

> Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:16-CV-1172

Before STEWART, Chief Judge, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Autobahn Imports, LP, sued Jaguar Land Rover North America, LLC, for damages. The claim was based on an earlier determination by the Board of the Texas Department of Motor Vehicles that Land Rover had violated the Texas Occupations Code by certain financial charges it made to Autobahn, its franchisee. Land Rover asserted two counterclaims for breach of contract. The

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-10349

district court dismissed the counterclaims for lack of subject matter jurisdiction after determining that the Board retained exclusive jurisdiction to make the initial determinations on the counterclaims.  We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff Autobahn Imports, LP, is a franchised dealer in Fort Worth, Texas for the defendant Jaguar Land Rover North America, LLC. In addition to a dealer agreement between the parties, Land Rover utilizes an incentive program known as the Business Builder Program to provide dealers with a percentage of the retail price of every vehicle sold if certain requirements are met.  The terms of the program are set forth in two documents: the Business Builder Program Manual ("Manual") and the Operations Bulletin, also known as the Contests and Incentives Standard Eligibility Rules for Retail Programs ("Rules").  The Manual and the Rules are collectively referred to as the Business Builder contracts.

In 2010, Autobahn and Land Rover disagreed about certain provisions of the 2011 Business Builder Program.  Autobahn filed a complaint with the Board of the Texas Department of Motor Vehicles ("the Board").  Before the Board ruled, the parties executed a Settlement Agreement establishing future policies for newly-sold vehicles as well as documentation requirements for the delivery of new vehicles to retail purchasers.  The Business Builder contracts and the Settlement Agreement stipulated that incentive payments would be contingent on Autobahn's delivering newly-sold vehicles directly to the end-user.  In addition, Autobahn was required to maintain documentation to validate the end-user addresses.

In 2014, Land Rover audited Autobahn's sales records and determined that approximately 85 vehicles sold in 2013 had not been delivered directly to an end-user according to its interpretation of the Manual and Settlement

No. 17-10349

Agreement.  Because Autobahn allegedly delivered the vehicles to a leasing company who then delivered the vehicles to subsequent users, Land Rover charged back approximately $317,000 from Autobahn's account.  Autobahn challenged the charge-back by filing a complaint with the Board in May 2014.

Autobahn argued that the terms of the incentive program violated Texas Occupations Code § 2301.467, barring distributors from requiring "adherence to unreasonable sales or service standards[.]"  The Board ruled in favor of Autobahn in September 2016.  Land Rover appealed to the Court of Appeals for the Third District of Texas in Austin, which affirmed the Board's decision in December 2017.  *Jaguar Land Rover N. Am. v. Bd. of the Tex. Dep't of Motor Vehicles*, No. 03-16-00770-CV, 2017 WL 6756997, at \*1 (Tex. App.—Austin Dec. 21, 2017, no pet.).

Because the Texas Occupations Code does not grant the Board authority to award damages, Autobahn filed suit in Texas state court in November 2016 for damages based on the Board's holding.  In December 2016, Land Rover removed the case to the United States District Court for the Northern District of Texas based on diversity of citizenship.  In its answer to the suit, Land Rover asserted as counterclaims that Autobahn breached the Business Builder contracts and the Settlement Agreement.  Autobahn moved to dismiss the counterclaims for lack of subject matter jurisdiction.  It argued that the Board had exclusive jurisdiction over such claims, requiring Land Rover to present them first to the Board.  In February 2017, the district court granted Autobahn's motion.  Land Rover timely appealed the district court's dismissal of the two counterclaims.[1]

---

[1] The district court later granted summary judgment in favor of Autobahn on its damages claim, awarding nearly a million dollars in damages.  *See Autobahn Imps., LP v. Jaguar Land Rover N. Am., LLC*, No. 4:16-CV-1172-A, 2017 WL 2684055, at \*7 (N.D. Tex. June 20, 2017).  Land Rover's appeal of that judgment is pending.  No.17-10737.

No. 17-10349

DISCUSSION

Land Rover raises two issues on appeal. First, it argues the district court erred in determining that the Board retains exclusive jurisdiction over its breach of contract counterclaims. Second, it argues error in the district court's alternative holding, that the Board retains primary jurisdiction.

Sitting in diversity, we apply Texas substantive law. *Austin v. Kroger Tex. LP*, 746 F.3d 191, 196 (5th Cir. 2014). In determining that law, we look "first to the final decisions of the Texas Supreme Court." *Id.* If that court has not spoken to an issue, we seek to predict its rulings "by looking to the precedents established by intermediate state appellate courts." *Howe ex rel. Howe v. Scottsdale Ins. Co.,* 204 F.3d 624, 628 (5th Cir. 2000).

Under Texas law, whether an agency has exclusive or primary jurisdiction is a question of law reviewed *de novo. Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex. 2002). Similarly, we review a district court's dismissal of claims for want of subject matter jurisdiction *de novo. SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 461 (5th Cir. 2010).

## I.     *Exclusive Jurisdiction*

Under Texas law, state "district courts are authorized to resolve disputes unless the Constitution or other law conveys exclusive jurisdiction on another court or administrative agency." *In re Sw. Bell Tel. Co.,* 235 S.W.3d 619, 624 (Tex. 2007). "Whether an agency has primary or exclusive jurisdiction to resolve an issue determines if a party must first exhaust administrative remedies before a trial court has subject matter jurisdiction over a dispute." *Subaru*, 84 S.W.3d at 222. If exhaustion is required and has not occurred, "the trial court lacks subject matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction." *Id.* at 221.

4

No. 17-10349

A Texas administrative agency "has exclusive jurisdiction when the Legislature gives the agency alone the authority to make the initial determination in a dispute." *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000). Whether an agency has such authority turns on whether "a pervasive regulatory scheme indicates that the Legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." *In re Sw. Bell*, 235 S.W.3d at 624–25. The determination is therefore a matter of statutory construction governed by the plain language of the statute and legislative intent. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 203 (Tex. 2002).

The Texas Supreme Court has held that the Texas Occupation Code "clearly expresses the Legislature's intent for the Board to have exclusive jurisdiction over matters the Code governs." *Subaru,* 84 S.W.3d at 223. Accordingly, "[t]he board has the exclusive original jurisdiction to regulate those aspects of the distribution, sale, or lease of motor vehicles that are governed by this chapter, including the original jurisdiction to determine its own jurisdiction." TEX. OCC. CODE § 2301.151(a). As to franchises, the Code states that "[t]he terms and conditions of a franchise are subject" to the Code. § 2301.003(a). That means that any "term or condition of a franchise inconsistent with [the Code] is unenforceable." § 2301.003(b).

Autobahn cites to Section 2301.002(15), the definitions subsection of the Code, to define "franchise" as it relates to the claims at issue. The definition broadly includes "contracts between a franchised dealer as franchisee and a manufacturer . . . including a written communication from a franchisor to a franchisee in which a duty is imposed on the franchisee[.]" § 2301.002(15). Autobahn also relies on general provisions of the Code: Section 2301.467 prohibits "adherence to unreasonable sales or service standards"; Section 2301.4749 requires a franchisor to provide "reasons for the rejection" when

5

No. 17-10349

denying an incentive payment; and Section 2301.475 permits a charge-back of incentive payments only upon "reasonable grounds to conclude that the dealer committed fraud[.]"

In interpreting whether these provisions grant exclusive jurisdiction, the parties look primarily to three cases. The first two opinions were issued by the Texas Supreme Court on the same day in 2002. *See Butnaru*, 84 S.W.3d 198; *Subaru*, 84 S.W.3d 212. In addition, Land Rover relies on one of our decisions handed down in 2003. *See Saturn Distrib. Corp. v. Paramount Saturn, Ltd.*, 326 F.3d 684, 686–87 (5th Cir. 2003).

In one of the Texas Supreme Court decisions, it considered whether the Board retained exclusive jurisdiction over a dispute between Subaru and one of its franchisee dealers. *Subaru*, 84 S.W.3d at 222–23. The court held that the statutory "language clearly and plainly evidences the Legislature's intent that it is a jurisdictional prerequisite that the Board resolve Code-based issues and claims before a party proceeds in court." *Id.* at 223. The plaintiff dealer alleged that Subaru unlawfully withheld approval to relocate a dealership contrary to an oral agreement between the parties. *Id.* at 226. The Code, however, only regulates *written* applications to relocate, and the provision at issue therefore could not provide the basis for exclusive jurisdiction. *Id.* Nonetheless, the court held that other provisions of the Code strictly regulated the "facts underlying" the breach of oral contract claims because the Board must still approve a license for any dealership location. *Id.* The plaintiff's claims were therefore "predicated on the assumption that the Board would have allowed the relocation and granted the license[.]" *Id.* The Board therefore retained exclusive jurisdiction over the claims because the underlying facts raised Code-based issues, even though oral contracts for dealership relocation were not expressly addressed by the Code. *See id.*

No. 17-10349

The other Texas state court decision addressed a prospective dealer's suit against Ford Motor Company for tortious interference with its attempted purchase of a dealership. *Butnaru,* 84 S.W.3d at 207. Applying the jurisdictional standard announced that same day in *Subaru,* the court concluded that the language of the Code did not signal legislative intent to replace the remedies available to a *prospective* purchaser of a dealership as opposed to a current dealer. *See id.* at 207–08. Thus, there was no Code provision dealing with the underlying facts of the plaintiff's claim. *See id.* The Board therefore lacked exclusive jurisdiction. *See id.* at 207.

Finally, this court considered whether an arbitration clause in a franchise agreement was sufficient to override the Board's jurisdiction. *Saturn*, 326 F.3d at 686. Land Rover principally relies on this language: "There are no legal restraints external to the parties' arbitration agreement that foreclose the arbitration of their dispute because the [Board] does not have exclusive jurisdiction of contractual disputes between franchisors and franchisees in the motor vehicle industry." *Id.* at 687. "Even if it did," the court held, "the strong federal policy favoring arbitration preempts state laws that act to limit the availability of arbitration." *Id.*

Here, the district court held that "[t]he subject matters of both of [Land Rover's] breach of contract claims are within the exclusive jurisdiction of the Board[.]" Land Rover argues that the exclusive jurisdiction question is foreclosed by our decision in *Saturn*. In the alternative, Land Rover argues that *Subaru* and *Butnaru* require exclusive jurisdiction only when the claims explicitly allege a violation of the Code or are "predicated on a regulatory decision within the Board's sole authority." Because Land Rover is alleging Autobahn violated the Business Builder Contracts and the Settlement Agreement, not the Code, it argues this case is more like *Butnaru*.

7

Autobahn argues that Land Rover must demonstrate a valid and enforceable contract between the franchisor and franchisee. *Werline v. E. Tex. Salt Water Disposal Co.*, 209 S.W.3d 888, 898 (Tex. App.—Texarkana 2006), *aff'd*, 307 S.W.3d 267 (Tex. 2010). Because (1) the Code deems unenforceable any franchise terms and conditions contrary to the Code (Section 2301.003); (2) all written communications imposing obligations between parties to the franchise are encompassed by the Code (Section 2301.002(15)); and (3) the Business Builder Contracts and Settlement Agreement imposed obligations on Autobahn; then (4) the Board has exclusive jurisdiction to determine whether the Business Builder Contracts and the Settlement Agreement are consistent with the Code in order for the documents to be enforceable. Restated according to *Suburu*, even if Land Rover's breach of contract claims are not explicitly alleging Code violations, the underlying facts still require determinations governed by the Code.

We first examine *Saturn.* Both parties go too far in characterizing our holding. Autobahn's argument that our statement regarding exclusive jurisdiction is *dicta* is incorrect. The Board's lack of exclusive jurisdiction over contractual disputes and the FAA's preemption of the Code are alternative holdings. *See Saturn*, 326 F.3d at 687. "This circuit follows the rule that alternative holdings are binding precedent and not *obiter dicta.*" *United States v. Bueno*, 585 F.3d 847, 850 n.3 (5th Cir. 2009) (citation omitted).

Similarly flawed is Land Rover's argument that *Saturn* forecloses the question of the Board's exclusive jurisdiction in all cases. Although we did not discuss *Subaru* in *Saturn,* there is no conflict between *Subaru*'s holding that the Board retains exclusive jurisdiction over matters the Code governs and *Saturn*'s holding that the Board's exclusive jurisdiction cannot serve as an external legal restraint to arbitration clauses. In that sense, we held that the Board's jurisdiction is not exclusive in *all* respects. *See Saturn*, 326 F.3d at

687.  Although the Board maintains exclusive jurisdiction over matters the Code governs, the Code does not govern every situation.  In those instances, the Board lacks exclusive jurisdiction.  *See Subaru*, 84 S.W.3d at 223.  The *Saturn* arbitration clause was such an instance.  *See* 326 F.3d at 687.

The plain language of the Code indicates that a written agreement between a franchisor and franchisee is unenforceable if it violates the Code.  *See* §§ 2301.002(15), 2301.003.  A complaint that seeks to enforce a contract between a franchisor and franchisee necessarily raises a Code question.

Concerning *Butnaru*, Land Rover argues that if the *Subaru* test looks to whether underlying facts raise Code-related questions, then the Butnarus' claims would have warranted exclusive jurisdiction.  It then posits that because the court denied exclusive jurisdiction, Autobahn's articulation of the *Subaru* test must be too broad.  A closer reading of *Butnaru*, however, reveals the court did suggest that the underlying facts would have brought the Butnarus' claims under the umbrella of the Board's exclusive jurisdiction *but for* their identity as a third party as opposed to a franchisor or franchisee.  *See* 84 S.W.3d at 207–08.

Land Rover's counterclaims for breach of contract require the presence of an enforceable contract, a question implicating the Code.  Land Rover cannot bypass the Board's exclusive jurisdiction by choosing to avoid explicitly relying on a Code provision as the basis for its counterclaims.  Because Land Rover's allegation is that Autobahn breached a written agreement between a vehicle franchisor and franchisee, a Code determination is required to determine if there was an enforceable agreement between the parties.  The Board therefore retains exclusive jurisdiction over Land Rover's counterclaims.

Given the Board's exclusive jurisdiction, we need not reach the alternative issue of whether the Board retains primary jurisdiction.

No. 17-10349

## II.    *Dismissal vs. Abatement of the Counterclaims*

The parties dispute whether it is more appropriate to dismiss or abate Land Rover's counterclaims in light of the Board's exclusive jurisdiction. The district court dismissed the counterclaims. The parties both cite to different passages of *Subaru*. Autobahn argues that *Subaru* permits discretion in determining whether to dismiss or abate the counterclaims while Land Rover argues that *Subaru* requires abatement.

As with the exclusive jurisdiction issue, we look to the decisions of the Texas Supreme Court for guidance and, in the alternative, "to the precedents established by intermediate state appellate courts." *Howe*, 204 F.3d at 628. The Texas Supreme Court has noted that typically, when a trial court determines it lacks subject matter jurisdiction on account of a state agency's exclusive jurisdiction, the court must dismiss the claims. *Subaru,* 84 S.W.3d at 227. Only when the impediment to jurisdiction can be removed may a court abate rather than dismiss the claim. *Id.* at 228. Applied to the facts of *Subaru*, the court held that the plaintiff had a "reasonable opportunity to cure the jurisdictional problem" by first exhausting his claim before the Board. *Id.*

At least one Texas intermediate appellate court has held that *Subaru* failed to elaborate "the circumstances which justify an abatement[.]" *O'Neal v. Ector Cnty. Indep. Sch. Dist.*, 221 S.W.3d 286, 290 (Tex. App.—Eastland 2006), *aff'd on other grounds*, 251 S.W.3d 50 (Tex. 2008). That court believed *Subaru* and related Texas Supreme Court opinions indicated "dismissal was the appropriate remedy where an administrative agency . . . had exclusive jurisdiction and had not yet ruled." *See id.*

Here, the district court noted that Land Rover is raising many of the same arguments in support of its counterclaims as it did when challenging Autobahn's claims already adjudicated by the Board. Although we do not forecast the Board's potential evaluation of Land Rover's counterclaims,

*Subaru* indicates that abatement turns largely on the possibility that the claims will eventually return to the trial court. *See* 84 S.W.3d at 227–28. The district court therefore did not err in determining that dismissal was appropriate given the unlikelihood of Land Rover's claims returning to the district court following adjudication by the Board.

AFFIRMED.